636 P.2d 888

**In the Matter of John DOE, a Child.**

No. 5159.

Court of Appeals of New Mexico.

Nov. 3, 1981.

Sandra A. Grisham, Durrett, Jordon, Grisham, P. C., Alamogordo, for appellant.

James W. Catron, Asst. Atty. Gen., Human Services Dept., Santa Fe, for appellee.

## OPINION

WALTERS, Chief Judge.

On December 11, 1980, the Human Services Department (HSD), appellee, filed an application to terminate parental rights in the district court in Otero County. After a hearing on the merits, the trial court terminated respondent's parental rights and she now appeals. We affirm the trial court's decision.

### I.

Respondent challenges numerous of the trial court's findings of fact. Her brief, in large part, sets forth the evidence most favorable to her arguments, contrary to Rule 9(d), N.M.R.Civ.App.P. The Supreme Court has held that appellant's failure to comply with this rule bars consideration of the appeal. *Lacy v. Holiday Management Co.*, 85 N.M. 460, 513 P.2d 394 (1973). We would be justified in following that course in this matter; however, because the issue here is concerned with termination of parental rights and the welfare of a minor, we choose to decide the appeal on its merits. We do not approve violation of the appellate rules. *See Henderson v. Henderson*, 93 N.M. 405, 600 P.2d 1195 (1979).

### II.

These findings are attacked by respondent:

5. [Respondent] has failed to provide [minor child] with proper subsistence in that her feeding practices over an extended period of time failed to provide the child with proper food in adequate quantities.

7. As a direct and proximate result of [respondent's] feeding practices, the child ... suffered malnourishment, exhibiting a variety of symptoms such as vomiting and diarrhea.

8. [Minor child's] symptoms of gastro-intestinal problems disappeared during hospital stays when he was fed by hospital personnel but returned when [respondent] was allowed to feed him unsupervised.

11. [Minor child's] gastro-intestinal problems cleared up after he entered foster care in the home of ... State licensed foster parents.

15. The Human Services Department has provided social services to [respondent] and her family including coordinating the services of appropriate agencies who offered nutrition and feeding practices instruction, counseling and therapy.

21. The Human Services Department and other agencies made reasonable efforts to assist [respondent] in adjusting to the conditions which render her unable to care for [minor child], and she is unlikely to change in the foreseeable future and be able to care for the child.

23. [Grandmother] failed to supervise her daughter's care of her grandchild and failed to prevent [minor child] from suffering malnourishment.

26. The natural parent/child relationship has developed between the foster family and the child.

27. A psychological parent/child relationship has developed between the foster family and the child.

29. Human Services Department has refused to guarantee that the child will be placed for adoption with his present foster parents, because of their age.

It is significant to note at the outset that the perspective of the trial judge, in determining the matter before him, was enhanced by the foregone acknowledgment of respondent's mental retardation by all of the parties and witnesses. The direct and cross-examination of the 27-year-old respondent demonstrates, from her responses to questions asked, a degree of incoherence, inconsistency and child-like lack of understanding. The trial court had the benefit of hearing the witnesses, including respondent,

and of observing their demeanor at trial. Our review in that respect is hampered by a "cold record"; nevertheless, the suggestion of respondent's mental limitations is present in the record.

(1) Findings 5, 7, and 21 are supported by the testimony of the pediatrician and the general practitioner who periodically attended and examined the respondent and the minor child, and by the social workers assigned to the case. Dr. Starr attributed the child's cachexia (profound ill health and malnutrition), present when he first examined him, to be the primary cause of the child's substantially underdeveloped physical and mental condition. He was concerned about respondent's poor feeding practices and attempted to instruct her how the baby should be fed. Both medical witnesses and one of the caseworkers expressly doubted respondent's capacity to properly care for the child's needs in the future. The other caseworker had some reservations whether she could ever be trained to do so.

■ We decline to hold that the substantial evidence supporting these findings was not clear and convincing to the trial court. Our view of the evidence, in a light most favorable to appellee, is to determine whether the factfinder could properly have reached an abiding conviction of the truth of the facts found. *Duke City Lumber Co., Inc. v. Terrel*, 88 N.M. 299, 540 P.2d 229 (1975). The evidence convincingly establishes the respondent's inability to comprehend and retain the medical advice given to her on how to care for her child; there is equally convincing evidence that her inattention to the child's needs was a contributing cause of his continued ill health and "failure to thrive." There was no error in the trial court's Findings 5, 7, or 21.

(2) Respondent contends that deficiencies in support of Findings 15 and 21 exist because there was no evidence that HSD had ever psychologically tested respondent to learn the severity of her mental retardation or the extent of her capability to learn parenting techniques.

Section 40–7–4 B(3), N.M.S.A.1978, implies that HSD must make "reasonable efforts to assist the parent in adjusting the conditions which render the parent unable to properly care for the child." There is evidence that for a period a home health nurse visited respondent's home twice a week to train respondent in feeding the child; that arrangements were made with Zia Therapy Center and the foster parents to teach child care to respondent; that transportation was arranged for her by HSD for those "learning" sessions. For one reason or another respondent failed to participate in most of the training program HSD attempted to put into effect.

■ The statute speaks of "reasonable efforts" to assist the parent. Viewing the evidence on this issue in the light most favorable to the prevailing party, *Adoption of Doe*, 89 N.M. 606, 555 P.2d 906 (Ct.App. 1976), we are satisfied that there is clear and convincing evidence of HSD's reasonable attempts to train this mother to care for her child. It must be remembered that the Department's first and paramount concern was for immediate daily attention to a severely undernourished child who also suffered with chronic gastro-intestinal problems. The child's needs could not be abated while every possible avenue for training the mother was explored, initiated, discarded, renewed, or abandoned. At some point HSD was justified in terminating its efforts to teach respondent how to properly care for the minor child and in accepting the foster home arrangement as the best solution.

These findings of the trial court are sufficiently supported by clear and convincing evidence. *Duke City, supra.*

■ (3) Respondent's argument that Finding 26 does not establish disintegration of the parent-child relationship, thus fatally tainting the judgment because it does not meet the requirement of § 40–7–4 B(4), is less than ingenuous. Appellee's Requested Findings 26 and 27 were:

The natural parent/child relationship does not exist.

A psychological parent/child relationship has developed between the foster family and the child.

Both findings were marked "Given" in the judge's handwriting. It is patent that a typographical error was made when the Requested Finding 26 was re-typed as a part of the Court's Findings. We will note the purely clerical error for what it is and suggest that on remand the correction in the court record be made.

The findings, as submitted by appellee and as intended by the trial court, find clear and convincing support in the testimony of the foster parents, the caseworkers, and the doctors who noted the absence of respondent's social, emotional and physical interaction with the child in their presence. We are also mindful of the trial court's opportunity to observe together all of the witnesses and the child in the courtroom.

(4) Respondent points out that no witness specifically stated that a "psychological parent-child relationship" had developed between the foster parents and the minor child. This gap in the testimony, she argues, together with the finding that HSD has not guaranteed that these foster parents will be able to adopt the child, negate Finding 27 and destroy the necessary requirements for termination under § 40–7–4 B(4).

■ Respondent overlooks the alternative statutory bases for termination of parental rights. The portions of § 40–7–4 B applicable to the facts of this case are:

B. The court shall terminate parental rights with respect to a minor child when:

(1) . . . .

(2) . . . .

(3) the child is a neglected or abused child as defined in Section 32–1–3 N.M.S.A.1978 and the court finds that the conditions and causes of the neglect and abuse are unlikely to change in the foreseeable future despite reasonable efforts by the department or other appropriate agency to assist the parent in adjusting the conditions which render the parent unable to properly care for the child; *or*

(4) the child has been placed in foster care by a court order or has been otherwise placed by parents or others into the physical custody of such family and the following conditions exist:

(a) the child has lived in the foster home for an extended period of time;

(b) the parent/child relationship has disintegrated;

(c) a psychological parent/child relationship has developed between the foster family and the child;

(d) if the court deems the child of sufficient capacity to express a preference, the child prefers no longer to live with the natural parent; and

(e) the foster family desires to adopt the child.

There can be no question from what we have said that all of the requirements of § 40–7–4 B(3) were met. On that ground alone, termination was proper.

Even so, from the evidence heard by the trial judge from several witnesses regarding the child's relationship and reactions to the foster parents, their professed love for the child and desire to adopt him, and the descriptions of their home efforts to help him to learn how to chew, walk, talk, play—all the while participating and cooperating in professional therapeutic programs as well—we are persuaded that the trial court could have reached "an abiding conviction" that the psychological parent/child bond of § 40–7–4 B(4)(c), *supra*, had developed. Whether the foster parents shall be allowed to adopt is not relevant to the statutory grounds for terminating the natural parent's rights.

(5) We turn finally to Respondent's challenges of the court's Findings 8 and 11. The evidence on the facts as stated in those findings is not clear and convincing. Indeed, the medical evidence indicates that vomiting and diarrhea was a chronic condition that continued to "flare up" for several years, even when the child was in the hospital and at the home of the foster parents. The doctors did believe that respondent's

negligent treatment and irregular feeding of the child were related to his early medical problems and endangered his health. But those opinions do not support the findings made.

 Findings 8 and 11, however, are unnecessary to support the courts's conclusion of neglect. Therefore, even if erroneous, they do not constitute ground for reversal. *State v. Natural Father*, 93 N.M. 222, 598 P.2d 1182 (Ct.App.1979).

The judgment is affirmed.

LOPEZ and DONNELLY, JJ., concur.