648 P.2d 798

In the Matter of the ADOPTION of John DOE, a child and Concerning Gail Wade Brownfield and George Wesley Brownfield, Petitioners-Appellees,

and

Laura Leslie Cook, Respondent-Appellant

and

Jeffrey Latawiec, Respondent-Appellee.

No. 5426.

Court of Appeals of New Mexico.

May 20, 1982.

Certiorari Denied July 8, 1982.

342

Mary E. McDonald, Sutin, Thayer & Brown, P. C., Albuquerque, for appellees the Brownfields.

Gail Wade Brownfield, Holloman Air Force Base, pro se and for appellee George Brownfield.

Ben A. Longwill, Las Cruces, for appellant Cook.

Charlotte Greenfield, Las Cruces, for appellee Latawiec.

Darrell Brantley, Alamogordo, Guardian ad litem.

## OPINION

DONNELLY, Judge.

This is an appeal by Laura Leslie Cook, (appellant), the natural mother of a minor child, from an order of the Otero County District Court, terminating her parental rights and granting a decree of adoption to petitioners, George Wesley Brownfield and Gail Wade Brownfield (Brownfields).

The minor child who is the subject of this action was born July 14, 1972, in Tucson, Arizona, to appellant and Jeffrey Latawiec. Appellant and the child's natural father were divorced in June, 1973, and appellant was awarded the legal custody of their minor son. Appellant married Mr. Brownfield, appellee, in October, 1973, and they resided in Las Cruces, New Mexico, with appellant's minor son. Appellant separated from Mr. Brownfield after approximately two weeks of marriage, taking her son with her to Tucson, Arizona, where she resumed living with her first husband until May, 1975.

In May, 1975, appellant reconciled with her husband, Mr. Brownfield, and she and her minor son resumed living with him in Las Cruces until January, 1976, when appellant again separated from Mr. Brownfield. Within approximately three weeks following their separation, appellant left her son with Mr. Brownfield. Mr. Brownfield moved to Odessa, Texas, to obtain other employment in April, 1976, and with appellant's consent took the child with him. The child has remained living with Mr. Brownfield since 1976, when he was four years old, until the present time. The child is now almost ten years of age.

Appellant moved from Las Cruces in November, 1976, to Ft. Collins, Colorado, where she resided until the summer of 1977, when she moved to Seattle, Washington. Before leaving Colorado, appellant visited her son in Odessa, Texas. Appellant and Mr. Brownfield remained separated following her departure in 1976, up to and including the date of their divorce on February 6, 1978. Thereafter, Mr. Brownfield married appellee, Gail Tawney Brownfield, on February 25, 1978. The minor child has continued to reside with the Brownfields since then.

Appellant visited her son for several days in July, 1978, and maintained contact with the child by telephone approximately twice a month.

In July, 1978, appellant and Mr. Brownfield signed an informal written contract which provided, inter alia, that appellant agreed to leave her son in the custody of Mr. Brownfield for an indefinite period, and expressly retained her parental rights and rights of visitation. The agreement further provided that Mr. Brownfield would never interfere with appellant's rights as a mother to the child and that he would share with appellant in the payment of the child's medical and dental expenses.

In 1979, appellant periodically began sending money to Mr. Brownfield for her son's support. In 1979, at age seven, the child flew to Seattle, Washington, for a visit of approximately two weeks with appellant and her boyfriend. At that time appellant was living with Arthur Cook, whom she subsequently married and with whom she has had two other children.

Since the summer of 1979, when her minor son visited with her in Seattle, appellant has visited with her son in Albuquerque, New Mexico, in December, 1979, and in November, 1980.

On November 16, 1980, appellant went to the Brownfield residence in Alamogordo, New Mexico, where the Brownfields had

moved with the child. Appellant informed the Brownfields she desired to take her son to Las Cruces for a day's visit. In fact, appellant planned to take her son with her to Seattle. Appellant did not tell the Brownfields of her intention to take her son to live with her sensing that they would legally resist such move.

Appellant and her son flew from El Paso, Texas, to Denver, Colorado, on the first leg of their proposed return to Seattle. The Brownfields discovered appellant's departure with the minor child from El Paso and obtained an *ex parte* Temporary Restraining Order from the Otero County District Court, giving them temporary custody of the minor child. Mrs. Brownfield, an attorney, signed a criminal complaint charging appellant with unlawful custodial interference. Appellant was taken into police custody when she and her son landed in Denver, Colorado, and the child was returned to the Brownfields pursuant to the *ex parte* court order obtained from the Otero County District Court.

After the child was returned to the physical custody of the Brownfields, they immediately filed a petition in the Otero District Court, seeking to adopt the child and to terminate the parental rights of appellant.

Appellant filed a response to the petition for adoption denying the Brownfields' legal right to adopt the child and asserting a counterclaim seeking legal custody. On March 23, 1981, appellant also moved for an order requiring the Brownfields to permit her to have reasonable visitation rights with her minor child during the pendency of the proceedings. The trial court ordered that appellant could visit her son every other Monday for two hours under the supervision and at the office of a child psychologist.

The natural father of the child, Jeffrey Latawiec, entered his appearance in the proceedings and gave written consent to the Brownfields to adopt the child.

The trial court appointed an attorney and a guardian *ad litem* to represent the minor child. The guardian *ad litem* supports the trial court's decision to permit the Brownfields' adoption of the child.

Following trial on the merits, the trial court entered its decision adopting findings of fact and conclusions of law, terminated appellant's parental rights to her son on the grounds specified in § 40–7–4(B)(4), N.M.S. A.1978 (Supp.1981), and adjudged the Brownfields to be the adoptive parents of the child.

The issues raised by appellant are whether: (1) the trial court erred in terminating appellant's parental rights to her son on the evidence presented below; (2) the termination of parental rights was improper because of appellee's alleged breach of contract of custody and fiduciary duty; (3) the adoption was barred by lack of compliance with § 40–7–19, N.M.S.A.1978, of the Adoption Act; and (4) the trial court erroneously applied the best interests of the child as a standard in the termination proceedings. We affirm.

### 1) *Sufficiency of Evidence*

Appellant asserts the trial court erred in terminating her parental rights because evidence adduced at the hearing on termination failed to support by a standard of clear and convincing evidence the finding that the parent-child relationship between appellant and her minor son had disintegrated as required under the provision of § 40–7–4(B)(4), *supra*.

The petition for adoption filed by the Brownfields alleged the existence of two separate grounds upon which termination of appellant's parental rights were sought: (1) abandonment, or (2) the requirements of § 40–7–4(B)(4), *supra*.

In determining that appellant's parental rights should be terminated, the trial court did not find that appellant was an unfit mother or that the child was abandoned, abused or neglected. The court expressly adopted findings of fact determining that the evidence showed: (1) the child has lived in the home of petitioners for an extended period of time; (2) the parent-child relationship between the minor and appellant has disintegrated; (3) a psychological par-

ent-child relationship has developed between the family of petitioners and the child; (4) the child is of sufficient capacity to express a preference and he prefers to no longer live with his natural mother; and (5) petitioners wish to adopt the minor child.

The decision of the trial court terminating appellant's parental rights was based solely upon the provisions of § 40–7–4(B)(4), *supra*, which provides:

B  The court shall terminate parental rights with respect to a minor child when:

\*   \*   \*   \*   \*   \*

(4) the child has been placed in foster care by a court order or has been otherwise placed by parents or others into the physical custody of such family and the following conditions exist:

(a) the child has lived in the foster home for an extended period of time;

(b) the parent/child relationship has disintegrated;

(c) a psychological parent/child relationship has developed between the foster family and the child;

(d) if the court deems the child of sufficient capacity to express a preference, the child prefers no longer to live with the natural parent; and

(e) the foster family desires to adopt the child.

Appellant has not challenged any of the findings of fact adopted by the court, except finding no. 3:

3. The parent/child relationship between [John Doe] and Respondent, Laura Leslie Cook, has disintegrated.

█ By not challenging any of the court's other findings of fact, we must accept them as binding on appeal. *Lerma v. Romero*, 87 N.M. 3, 528 P.2d 647 (1974); *Ojinaga v. Dressman*, 83 N.M. 508, 494 P.2d 170 (Ct.App.1972).

New Mexico courts have been particularly sensitive to protecting parental rights and the rights of parents to rear their chil-

dren. *Shorty v. Scott*, 87 N.M. 490, 535 P.2d 1341 (1975); *Roberts v. Staples*, 79 N.M. 298, 442 P.2d 788 (1968); *Greene v. French*, 97 N.M. 493, 641 P.2d 524 (Ct.App. 1982); *see Nevelos v. Railston*, 65 N.M. 250, 335 P.2d 573 (1959).

In *Shorty v. Scott, supra*, a case involving child custody rather than adoption, the court stated:

It has long been the rule that "Parents have a natural and legal right to custody of their children. This right is prima facie and not an absolute right." *Roberts v. Staples*, supra, n.1. This rule creates a presumption that the welfare and best interests of the minor child will best be served in the custody of the natural parents and casts the burden of proving the contrary on the non-parent.

The 1979 enactment of § 40–7–4(B)(4), *supra*, reflects a legislative change from the primacy of parental rights in favor of also giving consideration to the physical, mental and emotional welfare and needs of the child where a parent has left a child in the physical custody of foster parents for an extended period, and where the child has come to look upon his foster parents for all of the love, affection, instruction, and physical needs that the natural parents have failed to provide. Compare § 40–7–4, N.M. S.A.1978, *repealed* Laws 1979, ch. 387, § 1. Section 40–7–4(A) states: "In proceedings to terminate parental rights, the court shall give primary consideration to the physical, mental and emotional welfare and needs of the child."

By providing a means for termination of parental rights to free children legally for adoption, § 40–7–4(B)(4), *supra*, constitutes legislative recognition that extended long-term foster care of children is not in the best interests and welfare of the children.[1]

█ Appellant cites us to testimony in the record which is conflicting as to whether the parent-child relationship between the

---

**1.** In Note, Alternatives to "Parental Right" in Child Custody Disputes Involving Third Parties, 73 Yale L.J. 151 (1963), it is noted that, "The trauma of separating a child from the custody of an adult with whom an affection-relationship exists may be psychologically equivalent in its detriment to the orphaning of that child."

child and the natural mother had disintegrated. However, it is for the trier of fact to resolve the conflicts. *Lewis v. Bloom*, 96 N.M. 63, 628 P.2d 308 (1981); *Thompson v. Getman*, 74 N.M. 1, 389 P.2d 854 (1964). On appeal where issues as to sufficiency of evidence are raised, it is not the province of the appellate court to substitute its judgment for that of the trial court, but merely to determine whether the evidence in the record supports the findings and decisions of the trial court.

Dr. Juan Sosa, a child psychologist, testified that in his opinion, the parent-child relationship had not existed between appellant and her son, when appellant attempted to take her son to Washington sometime prior to November 16, 1980. Dr. Sosa stated that the mother had left the child at a critical point in his development which caused the child's rejection of her as a parent. Other witnesses, including the child's teacher, testified that the child reacted negatively to his natural mother's visits.

The trial judge, pursuant to stipulation of the parties, interviewed the child in chambers, in accordance with the provisions of § 40–4–9(C), N.M.S.A.1978, and outside the presence and hearing of the petitioners and appellant. The child told the court that he feared his mother and that he didn't want to see her again.

■ Appellant urges that the child's attitude is colored by attitudes instilled in him by the Brownfields and that appellees were responsible for the disintegration of the parent-child relationship, not the mother. We have carefully reviewed the entire record to determine the sufficiency of the evidence upon which the trial court based its findings. Despite conflicts in the evidence resolved by the trial court in favor of petitioners, it is not the function of this court on appeal to weigh the evidence or the credibility of witnesses, nor to substitute our judgment for that of the trial court, so long as the findings are supported by evidence meeting the clear and convincing evidence standard required in cases of this nature. *See Lewis v. Bloom, supra; State, Etc. v. Natural Mother*, 96 N.M. 677, 634 P.2d 699 (Ct.App.1981).

■ In proceedings seeking the termination of parental rights, the grounds for any attempted termination must be proven by clear and convincing evidence. Section 40–7–4(J), N.M.S.A.1978 (Supp.1981); *Santosky v. Kramer*, —— U.S. ——, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). The clear and convincing evidence standard requires proof stronger than a mere "preponderance" and yet something less than "beyond a reasonable doubt." *Matter of Valdez*, 88 N.M. 338, 540 P.2d 818 (1975). As stated in *In re Sedillo*, 84 N.M. 10, 498 P.2d 1353 (1972):

> For evidence to be clear and convincing, it must instantly tilt the scales in the affirmative when weighed against the evidence in opposition and the fact finder's mind is left with an abiding conviction that the evidence is true.

■ "The function of the appellate court is to view the evidence in the light most favorable to the prevailing party, and to determine therefrom if the mind of the factfinder could properly have reached an abiding conviction as to the truth of the fact or facts found." *Duke City Lumber Company, Inc. v. Terrel*, 88 N.M. 299, 540 P.2d 229 (1975). Under the evidence presented, the trial court could properly view the evidence to be clear and convincing that the parent-child relationship had disintegrated.

### 2) Breach of Contract; Fiduciary Duty

Appellant's second claim of error asserts that George Brownfield was obligated under the written contract dated July 1, 1978, to not interfere with her parental rights over the child. In response, the Brownfields argue that a private contract for child placement is not legally binding and is contrary to public policy.

■ Appellant argues that under *Huey v. Lente*, 85 N.M. 585, 514 P.2d 1081 (Ct.App.) (Hernandez, J. dissenting), *majority rev'd* 85 N.M. 597, 514 P.2d 1093 (1973), contracts between parties bestowing rights of guardianship, and covering the support and custo-

dy of minor children are tacitly recognized.[2] See also § 40–2–8, N.M.S.A.1978. In *Huey*, however, the custody agreement was not a private contract, but rather an agreement with the state itself through its Health and Social Services Department and is thus distinguishable from the case here. Marital separation agreements and agreements regarding child custody and support, like judicial decrees awarding child custody and fixing an amount of child support, are subject to modification by the court whenever substantial circumstances render such change proper and the best interests and welfare of the children so require. See *Spingola v. Spingola*, 91 N.M. 737, 580 P.2d 958 (1978); *Unser v. Unser*, 86 N.M. 648, 526 P.2d 790 (1974); *Scanlon v. Scanlon*, 60 N.M. 43, 287 P.2d 238 (1955); § 40–4–7(C), N.M.S.A. 1978. No different rule applies in the case of the agreement relied upon by appellant.

■ In the instant case, appellant sought to invest child custody rights in her ex-husband, Mr. Brownfield, both by a contract drafted by her and by a power of attorney. The legal import thereof attempts to create a right of guardianship in Mr. Brownfield over the child. The power of attorney expired six months after its execution. The contractual attempt to create a right of guardianship was not approved by a court of competent jurisdiction, as required by § 45–5–204, N.M.S.A.1978. Thus, the legal consequence of these instruments at best was to create a status of quasi-guardianship between appellant and Mr. Brownfield over the minor child and a declaration by appellant of Mr. Brownfield's right to physical custody of the child. *Greene v. French, supra*. Agreements, however, between parents and third parties regarding the guardianship, care, custody, maintenance or education of children are subject to judicial modification. Implicit in every such agree-ment is the right of parties and the court to amend or abrogate such agreements when circumstances necessitate and the best interests and welfare of the child so require. See § 40–4–7(C), *supra*; *Scanlon v. Scanlon, supra*.

The clear design of § 40–7–4(B)(4), *supra*, was to create a means of legally freeing a child if provided an additional ground for adoption. Where a child has been left for an extended or indefinite period of time in a foster home by the natural parents and the other criteria enumerated by the statute are found to exist parental rights can be terminated. New Mexico is one of five states that have adopted the Uniform Adoption Act.[3] The New Mexico Legislature enacted a modified Section 19 of the Uniform Adoption Act relating to the methods for termination of parental rights.[4]

The statutory grounds for termination of parental rights set forth in § 40–7–4(B)(4), *supra*, recognizes that children may form strong psychological bonds with foster parents. In certain instances, removal of children from the home or care of the only persons they have grown to consider as parents would result in serious psychological harm. Recognition of the rights of children as well as the rights of their parents was implicit in the enactment of § 40–7–4(B)(4). Subsection A of § 40–7–4 provides in part, "In proceedings to terminate parental rights, *the court shall give primary consideration to the physical, mental and emotional welfare and needs of the child.*" (Emphasis added.)

It was the intent of the legislature in enacting § 40–7–4(B)(4), *supra*, to provide for procedures to assure that the rights of natural parents are protected. The intention was also to further the best interest, needs, and rights of the child, by allowing for termination of parental rights and free-

2. Under § 45–5–104, N.M.S.A.1978 of the Uniform Probate Code, the legislature has authorized a parent or guardian, by a properly acknowledged power of attorney, to delegate to another person certain limited powers regarding the care, custody and control of a minor child for no longer than six months.

3. Uniform Adoption Act, 9 Uniform Laws Ann., Matrimonial, Family and Health Laws, Table at 1 (Supp.1982).

4. *Compare* § 40–7–4, *supra*, with Uniform Adoption Act § 19 (1969 Revision as amended 1971), 9 Uniform Laws Ann. at 51 (Master ed. 1979).

ing a child for adoption, where it is shown by clear and convincing evidence that a positive, nurturing parent-child relationship no longer exists, the child has been allowed to remain for an extended period of time in a foster home, and a psychological bond has been created between the child and the foster parents. Section 40–7–4(B)(4) does not define the term "extended period of time." Appellant, however, has not challenged the trial court's finding no. 1, that the child has lived in the home of petitioners for an extended period of time. Certainly a period of almost five years must be deemed to constitute an extended period of time.

It is clear that appellant drafted the contract and placed her child with the Brownfields intending to preserve her right of visitation and contact with the child. Public policy, however, dictates that in the absence of express statutory authority, a parent or guardian cannot by contract indefinitely restrict custodial rights of children. Indeed, the very language of the agreement between appellant and Mr. Brownfield indicates that appellant intended at the time of execution of the contract that it extend until the child attained adulthood. It provided that the agreement "expires July 14, 1990, on the 18th birthday" of the child.

Public policy militates against a parent who voluntarily contracts to place a child in the custody of another, ostensibly until the child attains the age of majority, and then asserts the defense of breach of contract or duty in a termination action predicated upon the child's best interest and welfare.

### 3) Compliance with Adoption Statute

Appellant argues that it was error to terminate her parental rights and enter the decree of adoption because of alleged noncompliance by petitioners with the provisions of § 40–7–19, *supra.*

Section 40–7–19 of the Adoption Act provides:

> As of the effective date of this section, *no petition for adoption shall be granted* by a district court *unless the child sought to be adopted was placed in the home of* *the proposed adopting parent or parents by the department, by the appropriate public authority of another state* or by a child placement agency that is licensed by either the department or the appropriate licensing authority of such other state where the agency is located, and such is verified by filing of an affidavit along with the petition setting out the facts of the placement of the child. Provided, however, that no such requirement shall exist in the case of:
>
> A. a child sought to be adopted *by a stepparent;*
>
> B. a child sought to be adopted by a relative within the fifth degree of consanguinity as defined by Sections 29–1–1 to 29–1–2 NMSA 1953, or his spouse;
>
> C. a child, over the age of two months, sought to be adopted by a person who is his sponsor at *baptism or confirmation* in a recognized religious ceremony;
>
> D. a child or children sought to be adopted by a person named in a deceased parent's will to take care of the child or children of the deceased; or
>
> E. a child or children adopted through a nationally recognized religious organization having a program recognized by the authority of such religious organization.
>
> *Provided, however, the court may in an independent action, waive the restrictions in this section* prior to the actual placement of the proposed adoptive child, provided that before granting the waiver, the court shall give at least thirty days' notice to the department of the application for waiver. The department shall have standing before the court to contest or approve the application for waiver. [Emphasis added.]

The above statute directs that as of the statute's effective date, no petition for adoption shall be granted unless the child was placed in the home of the adopting parents by the Department or a licensed child placement agency, unless petitioners have expressly established that they come within one of the exceptions enumerated

therein, or a court has affirmatively waived the restrictions set out therein "prior to the actual placement of the proposed adoptive child." The statute was enacted at the legislative session of 1975 and was effective in June, 1975.

■ The Brownfields urge that the above statute only applies to proceedings seeking a decree of adoption, and not to proceedings seeking termination of parental rights. We agree. By its express wording, § 40–7–19, *supra*, applies only to adoptions and not to termination of parental rights.

The Brownfields concede that the child was not placed with them by the Department or a licensed child placement agency and that they have not obtained a court ordered waiver of placement. The Brownfields, nevertheless, contend that they come within an express exception to the placement statute, either under the "stepparent" or "baptismal" provisions. When appellant initially left the child with Mr. Brownfield, he was the child's stepfather. After the initiation of adoption proceedings, the child was baptized in a religious service and the Brownfields were the child's baptismal sponsors. These factors, they argue qualify them for an exception under the statute. We need not decide these contentions.

The clear import of § 40–7–19, is to require state supervision over the placement of children for prospective adoption in order to regulate placement by private parties and by unlicensed adoption agencies. The obvious legislative intent was two-fold: (1) to restrict the unauthorized placement of children for adoption; and (2) to provide a means whereby the Department or an authorized child placement agency could ensure the placement of adoptable children with individuals who have been found by competent authorities to be fit and proper as prospective adoptive parents.

Section 40–7–19, *supra*, does not apply to the facts of this case. We have previously pointed out that the statute is worded in terms of placement of children for adoption. This wording is consistent with the title of the Act of which § 40–7–19, *supra*, is a part, Laws 1975, ch. 349. The title reads:

"AN ACT RELATING TO CHILDREN: REGULATING THE PLACEMENT OF CHILDREN FOR ADOPTION." Here, appellant left the child with Mr. Brownfield in 1976, when he was married to her. Although subsequently divorced from Mr. Brownfield, she elected to leave the child with her ex-husband for a period of almost five years. Appellant's act of leaving the child with Mr. Brownfield was not a "placement" for purposes of adoption within the purview of § 40–7–19, *supra*.

### 4) *Best Interests of Child Rule*

Appellant's final point asserts that the trial court erroneously applied an impermissible standard in its determination that the natural mother's parental rights should be terminated. Specifically, she argues that the trial court's oral ruling at the close of trial indicates that the trial judge improperly applied the "best interests of the child" rule in deciding to terminate the mother's rights.

■ A trial court's oral statements as to the basis for its ruling, made before judgment is entered, and not embodied therein, cannot be considered part of the judgment. *Stone v. Stone*, 79 N.M. 351, 443 P.2d 741 (1968); *Peterson Prop., Etc. v. Valencia Cty. Val. Protests Bd.*, 89 N.M. 239, 549 P.2d 1074 (Ct.App.1976).

■ Appellant correctly argues that a mere comparative analysis of prospective homes is improper in proceedings seeking to terminate parental rights. *State, Etc. v. Natural Mother, supra; Huey v. Lente, supra,* (Hernandez, J. dissenting); *see Shorty v. Scott, supra; Nevelos v. Railston, supra.* Nevertheless, the findings and conclusions of law adopted by the trial court herein indicate the basis for the court's action terminating the parental rights of appellant was grounded solely upon each of the factors required under § 40–7–4(B)(4), *supra*. Moreover, § 40–7–4(A), *supra*, expressly states that "In proceedings to terminate parental rights, the court shall give primary consideration to the physical, mental and emotional welfare and needs of the child."

The trial court expressly found that appellant's parental rights should be terminated based upon the provisions of § 40–7–4(B)(4), *supra*.

Finding no error, the judgment of the trial court is affirmed.

IT IS SO ORDERED.

WOOD and LOPEZ, JJ., concur.