677 P.2d 1070

**In the Matter of the ADOPTION OF Jane DOE, I and II.**

**Duane E. JACKLIN and Anna Jacklin, Petitioners-Appellants,**

v.

**Carmen DUDLEY and Philip Ray Yowell, Respondents-Appellees.**

**No. 7296.**

Court of Appeals of New Mexico.

Jan. 13, 1984.

Certiorari Denied March 1, 1984.

David F. Richards, Garrett & Richards, Clovis, for petitioners-appellants.

Robert Brack, Clovis, for respondent-appellee Dudley.

Morris Stagner, Clovis, for respondent-appellee Yowell.

James McDowell, Clovis, guardian ad litem.

## OPINION

DONNELLY, Chief Judge.

Appellants, Duane E. Jacklin and Anna Jacklin, the maternal grandparents, appeal from an order of the district court of Curry County denying their petition to adopt their two minor grandchildren. The single issue asserted by appellants on appeal, is whether the trial court erred in refusing to grant their petition for adoption. We affirm the ruling of the trial court.

### Facts

Appellees, Carmen Dudley and Phillip Ray Yowell are the natural parents of the two minor children sought to be adopted by appellants. Appellees were divorced in October, 1979, in the District Court of Curry County and custody of their two daughters, ages 6 and 3, was awarded to the mother.

In May, 1980, the children's mother voluntarily permitted one of the children to reside with the appellants. Approximately a year later, in June 1981, the natural mother consented to the placement of her other child with appellants. Appellant, Duane Jacklin, filed a petition in the District Court of Curry County, seeking his appointment as the guardian of the two children in September, 1981; the guardianship proceeding by appellant was consented to by the children's mother. Appellant's petition for guardianship stated that the appellant (Duane Jacklin) "has permitted and agrees to continue to permit the natural mother to visit said minor children at all reasonable times upon reasonable prior notice." The order granting guardianship of the minor children to Duane Jacklin, was silent concerning any provision for visitation by the natural parents.

After the appellant Duane Jacklin was appointed as the guardian of the two minor children, the natural parents of the children were prevented from visiting the children. On August 30, 1982, and following her remarriage to another man, the natural mother, Carmen Dudley, filed an action to terminate the guardianship seeking to obtain the return of the minor children to her custody. Appellants immediately filed a separate proceeding, seeking adoption of the children. The two actions were ordered consolidated for hearing before the trial court. At the conclusion of the hearing on appellants' petition to adopt the two minor children, the trial court adopted the following findings:

6. The natural father has not provided any personal care, support, education, moral or spiritual guidance, a home, or love or security for the minor children since September, 1980.

7. No parent-child relationship exists between the minor children and their natural father.

8. The natural father was found to have abandoned the children by order of [the] Court in Cause No. 81–PB–612. [The guardianship proceeding].

9. The natural father * * * cannot provide a proper home and environment for the minor children.

10. The natural mother * * * has a history of emotional and financial instability.

\* \* \* \* \* \*

12. Carmen Dudley has conducted herself in an immoral manner by residing with at least three different men without being married to them.

13. Carmen Dudley has experimented with the drug marijuana.

\* \* \* \* \* \*

15. Carmen Dudley has physically abused and neglected [one of] the minor [children].

16. The natural mother [subsequent to permitting one of her children to reside with appellants] * * * in May, 1980 * * * has since that time provided no personal care, support, education, moral or spiritual guidance, or love for said child.

17. The natural mother * * * voluntarily relinquished * * * [the second child to appellants], in June, 1981, and since that time provided no personal care, support, education, moral or spiritual guidance, or love or security for said child.

\* \* \* \* \* \*

19. From November, 1981, until May, 1982, the natural mother * * * made a few attempts to exercise visitation with the minor children and made a few phone calls to the children but the calls were all intercepted by [appellants] and she was denied all visitation privileges by the [appellants].

\* \* \* \* \* \*

23. The Jacklins [appellants] have systematically deprived the natural parents of any contact with the two minor children during the term of guardianship.

\* \* \* \* \* \*

35. The children are openly hostile toward both natural parents and do not desire to communicate or be involved in any manner with either natural parent.

36. No parent-child relationship exists between the natural mother and the two minor children.

The trial court also found that the minor children had expressed a preference to live with appellants, that the appellants were able to care for the children and that the children would suffer serious emotional trauma if they were removed from the custody of the appellants. The court further found that the natural parents were each financially capable of contributing to the support of their minor children.

Based upon the findings of fact, the trial court concluded that the natural mother had neglected her children and that the parent-child relationship between the children and their parents had disintegrated. The court concluded that a psychological parent-child relationship had developed between the appellants and the minor children. The court further concluded that the best interests of the minor children would be furthered by continuing the guardianship and leaving the children with appellants, subject to "increased visitations and contact with the two minor children." Finally, the court concluded that:

8. The parental rights of the natural parents * * * should not be terminated.

9. The Petition for Adoption by the maternal grandparents should not be granted because the Jacklins have by their own conduct helped destroy the parent-child relationship between the natural parents and the two minor children.

Based upon these findings and conclusions the trial court denied appellants' petition for adoption, but continued the grandfather's (Duane Jacklin), guardianship of the two children. Appellants have appealed from the denial of their petition for adoption. No cross-appeal has been filed by either of appellees.

*Denial of the Adoption*

Appellants contend the trial court erred in denying their petition for adoption. Appellants claim that they met the burden imposed under NMSA 1978, § 40–7–4(B)

(Repl.Pamp.1983), and that based upon the findings of the trial court, the trial court abused its discretion in refusing to grant the adoption.

Section 40–7–4(B), provides in applicable part as follows:

B. The court *shall* terminate parental rights with respect to a minor child when:

\* \* \* \* \* \*

(4) the child has been placed in foster care by a court order or has been otherwise placed by parents or others into the physical custody of such family and following conditions exist:

(a) the child has lived in the foster home for an extended period of time;

(b) the parent-child relationship has disintegrated;

(c) a psychological parent-child relationship has developed between the foster family and the child;

(d) if the court deems the child of sufficient capacity to express a preference, the child prefers no longer to live with the natural parent; and

(e) the foster family desires to adopt the child.

[Emphasis added] [1]

The statutory requisites for termination of parental rights must be proven by clear and convincing evidence. NMSA 1978, § 40–7–4(K) (Repl.Pamp.1983); *see also Huey v. Lente*, 85 N.M. 585, 514 P.2d 1081 (Ct.App.) (specially concurring opinion), majority opinion rev'd., 85 N.M. 597, 514 P.2d 1093 (1973); *In re Adoption of John Doe*, 98 N.M. 340, 648 P.2d 798 (Ct.App.1982).

■ Appellants contend that since Section 40–7–4(B) contains the word "shall" the trial court is without any discretion to deny the adoption if appellants have proven each element of the statute by clear and convincing evidence. We do not interpret Section 40–4–7(B) as depriving the trial court of all discretion.

■ Determination of whether a petition for adoption should be granted or denied is subject to review for abuse of discretion, but an appellate court will not interfere with the trial court's determination in an adoption proceeding unless a clear abuse of discretion is manifested. *Adoption of Lingol*, 107 Cal.App.2d 457, 237 P.2d 57 (1951). An abuse of discretion occurs when in light of all the circumstances before it, the trial court exceeds the bounds of reason. *Dunham-Bush, Inc. v. Palkovic*, 84 N.M. 547, 505 P.2d 1223 (1973).

■ The primary purpose of both adoption and termination of parental rights is the protection and promotion of the child's best interests. NMSA 1978, § 40–7–4(A) (Repl.Pamp.1983); *see also In re Adoption of John Doe*. In factoring the "best interests of the children," the trial court must also be sensitive to protecting the parental rights of parents. *Shorty v. Scott*, 87 N.M. 490, 535 P.2d 1341 (1975); *In re Adoption of John Doe*. Although adoption proceedings are special statutory proceedings because they involve issues relating to the termination of parental rights, the trial court is also invested with some equitable powers. *See Wilson v. Pierce*, 14 Utah 2d 317, 383 P.2d 925 (1963); *Walton v. Coffman*, 110 Utah 1, 169 P.2d 97 (1946). Moreover, our Supreme Court has recognized the existence of public policy considerations incident to adoption proceedings, in protecting parental rights, as well as fostering the best interests and welfare of the minor children. *Shorty v. Scott; Roberts v. Staples*, 79 N.M. 298, 442 P.2d 788 (1968); *In re Adoption of Bradfield*, 97 N.M. 611, 642 P.2d 214 (Ct.App.1982); *see also In re Adoption of Doe*, 89 N.M. 606, 555 P.2d 906 (Ct.App.1976).

The trial court in its Finding No. 23, found that appellants "have systematically deprived the natural parents of any contact with the two minor children during the term of the guardianship." Despite the allegation in Duane Jacklin's petition for

---

1. Subsequent to the hearing by the trial court herein, the legislature amended the statute to add a new Subsection C which states that when all the conditions set forth in Paragraph (B)(4) above exist, those conditions shall create a rebuttable presumption of abandonment.

guardianship that reasonable parental visitation would be permitted, appellants have prevented any visitation by the parents with the children, including attempts by both parents to contact their children by phone.

 A key requirement in determining whether parental rights should be terminated under Section 40–7–4(B), is whether the parent-child relationship has disintegrated. Appellants cannot, however, point to evidence that establishes the disintegration of the parent-child relationship on the one hand, and ignore evidence that appellants' own actions constituted the causative factors which have precluded the natural parents from any meaningful contact with their minor children or which have prevented them from any opportunity to improve their parent-child relationship.

Based upon the findings of the trial court, it determined that the petition for adoption should not be granted because appellants by their own conduct have been instrumental in helping to destroy the parent-child relationship. Under the record herein, those findings are supported by the record, and are conclusive on appeal.

Because of the harshness of permanently terminating parental rights, there must be strict compliance with the requirements of the adoption statutes and proof of each element must be by clear and convincing evidence. *See Petition of F.J.H.*, 628 P.2d 159 (Colo.App.1981). Moreover, the parties seeking to perfect the adoption, must not have by their own conduct intentionally contributed to the factors causing the disintegration of the parent-child relationship.

A review of the findings adopted by the trial court reveal that Judge Hensley carefully balanced both the best interests of the minor children and the policy of protecting parental rights. He considered the positive influences which ensued from the care and nurturing provided by appellants, as well as appellants' actions in obstructing visitation or contact between the children and their parents. Under these circumstances the trial court's denial of appellants petition for adoption was not error. On appeal, the reviewing court views all evidence in the light most favorable to the prevailing party. *In re Adoption of John Doe.* As shown by the evidence, the trial court did not abuse its discretion in refusing to grant the adoption nor did the trial court fail to properly apply the provisions of the Adoption Act.

The judgment of the trial court is affirmed.

IT IS SO ORDERED.

WALTERS and ALARID, JJ., concur.