711 P.2d 894 (1985)
103 N.M. 617
In the Matter of the Termination of Parental Rights, with Respect to C.P. and E.P., Children.
STATE of New Mexico, ex rel., DEPARTMENT OF HUMAN SERVICES, Petitioner-Appellee,
v.
Cynthia La Dale PETERSON, Respondent,
v.
James Lee PETERSON, Respondent-Appellant.
No. 8338.
Court of Appeals of New Mexico.
October 29, 1985.
Certiorari Denied December 6, 1985.
*895 Delfido R. Conroy, Belen, for respondent-appellant.
Paul G. Bardacke, Atty. Gen., Richard Rubin, Gen. Counsel, Ellen Souberman, Ass't Gen. Counsel, Santa Fe, Earl J. Waits, Special Ass't Atty. Gen., Albuquerque, for petitioner-appellee.

OPINION
MINZNER, Judge.
Respondent James Lee Peterson appeals the trial court's determination that his parental rights to a daughter, C.P., and a son, E.P., should be terminated. Although the court also terminated the rights of the children's mother, Cynthia La Dale Peterson, from whom respondent is divorced, she has not appealed. Respondent claims the state failed to establish abandonment by clear and convincing evidence. Respondent also claims the Department of Human Services failed to make reasonable efforts to help him remedy conditions and that the trial *896 court may not order termination on the basis of neglect until such efforts have been made. He asks for attorney fees on appeal.
This appeal raises the issue of whether the department may rely on evidence of past neglect and abuse in proving abandonment when the application for termination alleged neglect as well as abandonment and there is no evidence that the department attempted to help respondent remedy past conditions. We affirm the trial court's decision to terminate parental rights on the basis of abandonment and remand only for purposes of establishing attorney fees on appeal.
While this case was on appeal, the relevant statute was amended, see 1985 N.M. Laws, ch. 194, § 39, and new provisions governing the termination of parental rights were enacted, see NMSA 1978, § 32-1-54 and -55 (Cum.Supp. 1985). All citations in this opinion, however, are to the statutory provisions governing the termination of parental rights at the time of trial. See NMSA 1978, § 40-7-4 (Repl. Pamp. 1983).

Facts and Procedural Background
Respondent and Cynthia had three children. C.P. was born on May 2, 1978. There was testimony at trial that another child was born and died soon after birth in 1980. E.P. was born January 5, 1982. During most of the time following the birth of respondent's three children, he was either in jail or prison and did not assist in caring for his children. The record also indicates that during this period, at times when respondent was not incarcerated, he engaged in a pattern of heavy alcohol abuse.
Soon after birth, E.P. was placed in the legal custody of the state, pursuant to a consent decree entered April 15, 1982 in Curry County. Although the record of this proceeding was not made part of the record on appeal, this court on its own initiative directed that it be transmitted, pursuant to NMSA 1978, Crim., Child.Ct., Dom.Rel. & W/C App. Rule 206(c) (Repl.Pamp. 1983). The supplemental record discloses respondent at this time was in the county jail. The consent decree was revoked by an order entered August 4, 1982, which placed custody in the Department of Human Services for two years and ordered the department to arrange a transfer of proceedings to Valencia County.
At trial, the court took judicial notice of the records in the Valencia County neglect actions. Although these records also were not made part of the record on appeal, this court directed that they be transmitted. Id. The supplemental record does not disclose why the consent decree was revoked. Orders subsequently entered in Valencia County approved and reviewed progress under a treatment plan for the children's mother. An order entered in November 1983 returned E.P. to his mother's physical custody.
Within the next six months, the department found it necessary to place both children in foster care. E.P. was hospitalized and in foster care at various times while in his mother's custody, having been diagnosed as a "failure to thrive" child. In April 1984, the children's mother was arrested as an accessory to assault. C.P. was put under protective custody and placed in foster care; the department filed a petition alleging the mother's male companion had abused both children and seeking an adjudication that C.P. was a neglected or abused child. In May 1984, the trial court entered an order returning physical custody of E.P. and temporary custody of C.P. to the department; the court also approved another treatment plan pending final adjudication of the neglect petition. This plan, like the first, provided support for the mother in caring for the children.
On May 31, 1984, the state petitioned for termination of both parents' rights. The petition relied upon neglect with respect to the children's mother, referring to the neglect and abuse that resulted in the Valencia County neglect actions. The petition relied upon abandonment and neglect with respect to respondent, referring to Curry County neglect actions and to his incarceration. On June 22, 1984, C.P. was adjudicated *897 a neglected child. At this time, respondent was an inmate at the state penitentiary. The court appointed counsel for respondent and an attorney as guardian ad litem for the children.
The trial court held a hearing in October. At respondent's request, his defense was scheduled to be heard at a second hearing. At the October hearing, most of the state's evidence concerned the children's mother, her care of the children, and her progress in following the treatment plans, although two witnesses also made reference to respondent. Pamela McKenzie, the social worker assigned to the case in early 1983, testified extensively to the care received by the children while they were living in Valencia County and her department's efforts to help the mother. Dr. Lee, a clinical psychologist, first met the children and their mother in late 1982 when she was asked to assist in reuniting E.P. with his mother and sister. Although she reviewed the mother's progress in therapy, she also related comments by C.P. and her mother about respondent.
At the close of the first hearing, the state moved for a psychological evaluation of respondent. Subsequently, the trial court appointed Dr. Thomas, a psychologist, to make the evaluation. At the second hearing, she testified that respondent did not have the intellectual capability to care for his children. Although she acknowledged his desire to care for them, she testified that he had diminished capacity due to severe alcohol abuse prior to imprisonment. Respondent gave Dr. Thomas a personal and medical history that revealed a period of heavy drinking from 1971 to 1982. Her evaluation indicated his diminished capacity probably was not reversible.
When respondent testified, he acknowledged that he had had a drinking problem, but he described a religious conversion that had freed him from his dependency. He acknowledged that his drinking habits had prevented him from caring for his children, but he stated he presently could care for them.
The children's mother also testified. She confirmed that respondent wrote her about the children and that he sent her money for them. She also testified that the children had visited him in prison. Finally, she testified that respondent had, when intoxicated, hit the children, although she denied that he had ever hit C.P. and E.P.
Following hearings, the trial court stated orally that there was clear and convincing evidence that both parents were guilty of neglect, abuse and abandonment. The trial court found that "[t]he children have been abandoned by the parents," and that they "are abused and neglected by the parents." The trial court made other findings relevant to the parents' fitness and capacity to care for the children.
While this case has been pending on appeal, respondent was released from prison. He has moved this court for a stay of judgment and for scheduled visitation. This court denied the motion.
The state contends that the findings are binding on appeal because they are not specifically challenged. See In re Adoption of Doe, 98 N.M. 340, 648 P.2d 798 (Ct.App. 1982). Since respondent's brief clearly claims that abandonment was not proved, defendant has made a sufficient challenge to the finding of abandonment. See Salazar v. City of Santa Fe, 102 N.M. 172, 692 P.2d 1321 (Ct.App. 1983); NMSA 1978, Crim., Child.Ct., Com.Rel. & W/C App.R. 501(a)(3) (Repl.Pamp. 1983). Respondent has not challenged specific findings as to neglect, although he contends there was no evidence to support an ultimate fact required for termination on the basis of neglect. The state's argument concedes the absence of evidence as to the ultimate fact. More specific challenges were not necessary to respondent's arguments. See id.
The court's conclusions of law terminated defendant's parental rights on the basis of abandonment and neglect but cited only the statutory provision relevant to abandonment. Under the New Mexico statutory scheme, abandonment and neglect are separate, independent grounds *898 for terminating parental rights. State ex rel. Human Services Dep't v. Levario, 98 N.M. 442, 649 P.2d 510 (Ct.App. 1982). Each is alternative to the other. Id. The trial court did not identify its reasons nor did it need to do so. State Health and Social Services Dep't v. Smith, 93 N.M. 348, 600 P.2d 294 (Ct.App. 1979). The appellate issue is whether the findings of ultimate fact were supported by the evidence. Id.

Sufficiency of the Evidence of Abandonment
In proceedings seeking the termination of parental rights, the grounds for any attempted termination must be proved by clear and convincing evidence. In re Adoption of Doe, 98 N.M. 340, 648 P.2d 798. A trial court's decision terminating parental rights will be upheld if its findings are supported by clear and convincing evidence and if it applied the proper rule of law. State ex rel. Dep't of Human Services v. Minjares, 98 N.M. 198, 647 P.2d 400 (1982).
This court has adopted an objective test for abandonment that has two parts. The test requires proof of parental conduct that implies a conscious disregard of parental obligation; there must also be evidence that the parent-child relationship was destroyed by the parental conduct. We must view the evidence in the light most favorable to the prevailing party. See In re Adoption of Doe, 89 N.M. 606, 555 P.2d 906 (Ct.App. 1976).
Incarceration, alone, does not constitute abandonment. In re Adoption of Doe, 99 N.M. 278, 657 P.2d 134 (Ct.App. 1982). Other relevant factors include parental neglect, lack of affection shown toward the children, failure to contact them, failure to support them, if able to do so, as well as disregard for their general welfare. Id. Although statutory requirements for termination differ among jurisdictions, our case law is consistent with that of other jurisdictions in requiring more than incarceration to prove abandonment, neglect or unfitness. See In re Guillory, 618 S.W.2d 948 (Tex.Civ.App. 1981); In re S.D.H., 591 S.W.2d 637 (Tex.Civ.App. 1979). See generally Annot. 79 A.L.R.3rd 417 (1977).
No specific intent is required; rather, the requisite disregard may be inferred from purposeful parental conduct. In re Adoption of Doe, 89 N.M. 606, 555 P.2d 906. See also Emmons v. Dinelli, 235 Ind. 249, 133 N.E.2d 56 (1956) (careless and negligent failure to perform parental duties is a significant element of abandonment or desertion). The question of whether the inference should be drawn is a question of fact for the trial court. See In re Juvenile Action No. S-624, 126 Ariz. 488, 616 P.2d 948 (App. 1980) (trial court finding that father's conduct did not support an inference of conscious disregard affirmed). Cf. In re Guardianship of Sain, 217 Neb. 96, 348 N.W.2d 435 (1984) (trial court finding of no abandonment affirmed, where evidence showed custodial parent interfered with noncustodial parent's attempts to maintain relationship with child). We must decide whether the inference is justifiable.
The state argues that the children were abandoned "long before [respondent] was incarcerated." The state contends that there was evidence at trial of other factors relevant to abandonment. The state argues the evidence showed that defendant, prior to incarceration, demonstrated a conscious disregard of the obligations owed by a parent to a child.
Respondent has contended that the department may not rely on evidence of past neglect. He argues that the department equated abandonment and incarceration in its petition and relied on that allegation at trial. The record, however, contains evidence of past neglect, and the petition alleged that the "conditions and causes of the neglect and abuse which was the basis for the filing of the Curry County neglect actions are unlikely to change in the foreseeable future." We hold that the application sufficiently stated abandonment on the basis of factors other than incarceration. See § 40-7-4(F)(2).
*899 If the trial court's conclusion as to abandonment can be supported on the evidence of incarceration, together with other relevant factors, we should affirm. See State v. Beachum, 83 N.M. 526, 494 P.2d 188 (Ct.App. 1972) (a decision of the trial court will be upheld if it is right for any reason). Cf. State v. Levario (where the trial court rendered judgment on only one ground, the other was irrelevant on appeal). See also In re Doe, 97 N.M. 69, 636 P.2d 888 (Ct.App. 1981). Consequently, we review the evidence of neglect and abuse, as well as incarceration, in considering the sufficiency of the evidence as to abandonment.
The evidence showed that while in prison, defendant expressed affection, sent financial support and indicated concern for the children's general welfare. In addition, respondent's incarceration was nearly completed and has now ended.
Nevertheless, there was clear evidence of very different conduct over a prolonged period of time prior to the present term in prison. Respondent admitted repetitive imprisonment and a long-term addiction to alcohol; he conceded that as a result of his conduct, he had not been able to care for his children. There was evidence that respondent had physically abused his children and his wife during this period. The period of neglect and abuse coincided with his daughter's early years and with his son's infancy.
Although the evidence in this case was directed primarily at the mother's neglect after she and the children moved to Valencia County, it is also evidence of past neglect by the father. See Kimsey v. Kimsey, 208 Neb. 193, 302 N.W.2d 707 (1981). A father may not delegate parental obligations to the mother and be held harmless when she neglects these obligations. Id.
The record contains evidence from which the trial court could have found that respondent's conduct had contributed to a destruction of his relationship with the children. Dr. Lee testified that C.P. did not want to visit respondent because she was afraid and angry and that C.P. blamed her father for the death of her baby sister. C.P. also told Dr. Lee that respondent had hit her and her mother. Dr. Lee also testified that C.P. would be traumatized if she thought she were going to be placed with respondent and that her mother opposed it. Finally, Dr. Lee testified that E.P. would require some time to adjust to placement with respondent and that the children should be placed together. The trial court was entitled to conclude that respondent's conduct also contributed to the lack of a bond with his son. Cf. In re adoption of Doe, 100 N.M. 764, 676 P.2d 1329 (1984) (trial court did not err in finding former husband's disregard of parental obligations led to destruction of the parent-child relationship where father chose separation).
Although the statute does not require the same effort on the part of the state when termination is sought on the basis of abandonment, see § 40-7-4(B)(1), as when termination is sought on the basis of neglect, see § 40-7-4(B)(3), the department may not rely on a theory of abandonment when it is unable to establish neglect for lack of reasonable efforts to assist the parents. Otherwise, the legislature's intent in requiring additional proof would be circumvented.
This court repeatedly has stated that the statute requires the department to make reasonable efforts to assist the parent in adjusting the conditions that render him unable to care properly for the child. In re Adoption of Doe, 97 N.M. 69, 636 P.2d 888 (Ct.App. 1981); State ex rel. Dep't of Human Services v. Natural Mother, 96 N.M. 677, 634 P.2d 699 (Ct.App. 1981). Absent some efforts, ordinarily termination on the basis of neglect is not proper. See People in Interest of M.C.C., 641 P.2d 306 (Colo. App. 1982). We assume, but need not decide, that when the legislature used the term "reasonable efforts," see § 40-7-4(B)(3), and directed the trial court to give "primary consideration to the physical, mental and emotional welfare and needs of the child," see § 40-7-4(A), it recognized the possibility that in some cases, no efforts would be necessary where there is a *900 clear showing that such efforts would be futile. See In re C.L.R., 685 P.2d 926 (Mont. 1984). See also In re Adoption of Doe, 97 N.M. 69, 636 P.2d 888.
On these facts, however, the department was not required to make further efforts to assist respondent. First, the department made reasonable efforts to assist the children's mother, in whose care respondent left the children. In addition, there was evidence that the results of the father's past conduct were not remediable. Under these circumstances, although neglect was part of the state's proof of abandonment, the department was not required to show additional efforts to assist respondent. See § 40-7-4(B)(1).
Taken cumulatively, there was sufficient evidence to support the trial court's decision. Compare Wray v. Lenderman, 640 S.W.2d 68 (Tex. App. 1982) (incarceration together with other factors may establish a course of conduct that satisfies statutory test of endangering child's well-being), with In re Interest of Reed, 212 Neb. 208, 322 N.W.2d 411 (1982) (substantial, continued and repeated neglect, together with incarceration, is sufficient to support termination of parental rights). The department proved abandonment on the basis of past neglect and abuse, as well as present incarceration.

Attorney's Fees
Respondent has asked this court to award attorney's fees on appeal. The state does not contest the request. Attorney fees were denied for similar work in In re Adoption of John Doe, 99 N.M. 278, 657 P.2d 134. In this case, the trial court appointed appellate counsel pursuant to a court rule and ordered payment at a rate similar to that paid for trial representation. Cf. id.; see NMSA 1978, Crim., Child.Ct., Dom.Rel. & W/C App.R. 303(b) (Repl. Pamp. 1983). Under these circumstances, we affirm the trial court's order. We direct that, on remand, the trial court set the fee for counsel's work on appeal.

Conclusion
The trial court's termination of respondent's parental rights is affirmed. The cause is remanded for purposes of establishing the fee for counsel's work on appeal.
IT IS SO ORDERED.
DONNELLY, C.J., and GARCIA, J., concur.