535 P.2d 1341

**Lucy SHORTY, Plaintiff-Appellant,**

v.

**Lilly SCOTT, Defendant-Appellee.**

No. 10083.

Supreme Court of New Mexico.

June 4, 1975.

James A. Burke, Las Vegas, for plaintiff-appellant.

Jose E. Armijo, Roberto C. Armijo, Las Vegas, for defendant-appellee.

## OPINION

STEPHENSON, Justice.

In this declaratory judgment action, appellant, Mrs. Shorty, unsuccessfully sought

to regain custody of her two preschool age daughters from her mother, the maternal grandmother of the children, Mrs. Scott. Mrs. Shorty appeals.

Mrs. Shorty and her late husband, Larry Shorty, were living in Gallup in 1970, when Mr. Shorty was killed in a traffic accident. The Shortys had one daughter, Frances Lucille. A posthumous child, Carrie Ann was born later.

Mrs. Scott was invited to live with the Shorty family following Mr. Shorty's death. In February, 1971, the parties returned to Las Vegas with the children where they lived together until February, 1972.

Mr. Shorty's sudden death was a traumatic experience for Mrs. Shorty. She suffered emotional difficulties. She decided to leave, apparently without very definite plans, and in February, 1972, went first to Clovis and then to Phoenix, Arizona. She left the little girls in Mrs. Scott's care and before her departure arranged with the Social Security Administration to send her child support payments to Mrs. Scott for the support of the children. During her absence, she evinced an interest in the children. She sent letters, called, and made several trips back to Las Vegas to see them. She also gave Mrs. Scott money to help with support and, as the latter admitted, "she used to pawn things to get them some milk." In April, 1974, Mrs. Shorty returned to Las Vegas and sought to regain custody of her children. Mrs. Scott refused and this action ensued.

After hearing testimony, the trial court found, inter alia, "that the children have been well cared for by the defendant, Lilly Scott, who is a proper person to have the custody of said minor children, and that their best interests will be served by having the children continue in her custody." He then concluded that Mrs. Scott should be granted custody of the girls "and should continue to receive the social security payments in her name."

A guardianship proceeding had also been filed, apparently by Mrs. Scott. From the transcript, it appears that those proceedings, No. 20559 on the district court docket, were "consolidated" with this case. There is no appeal of the guardianship action nor is the record thereof before us. As to it, we express no opinion.

Mrs. Shorty appeals, contending only that the trial court erred as a matter of law by awarding custody of the minor children to the grandmother without any finding that the natural mother was unfit or otherwise unsuitable to perform her maternal duties.

At the outset, Mrs. Shorty asserts that New Mexico recognizes the "parental right" doctrine[1] while Mrs. Scott argues the "welfare and best interests of the minor child" doctrine prevails.[2] The stalemate is understandable. Our cases fail to maintain a clear distinction between the two concepts. In practice, they have served as broad policy statements to guide trial judges in exercising their unquestionably broad discretion in deciding custody disputes.[3] The New Mexico cases seem to

---

1. Succinctly stated: "A parent who is able to care for his children and desires to do so, and who has not been found to be an unfit person to have their custody in an action or proceeding where that question is in issue, is entitled to custody as against grandparents or others who have no permanent or legal right to custody." Irwin v. Irwin, 211 Kan. 1, 7, 505 P.2d 634, 639 (1973). See, e. g., Roberts v. Staples, 79 N.M. 298, 442 P.2d 788 (1968) ; Cook v. Brownlee, 54 N.M. 227, 220 P.2d 378 (1950) ; Young v. Young, 46 N.M. 165, 124 P.2d 776 (1942) ; Hill v. Patton, 43 N.M. 21, 85 P.2d 75 (1938) ; Focks v. Munger, 20 N.M. 335, 149 P. 300 (1915).

2. See e. g., Garner v. Stone, 85 N.M. 716, 516 P.2d 687 (1973) ; Kotrola v. Kotrola, 79 N.M. 258, 442 P.2d 570 (1968) ; Ettinger v. Ettinger, 72 N.M. 300, 383 P.2d 261 (1963).

3. See § 22-7-6, N.M.S.A.1953 (Supp.1973) ; § 32-1-4, N.M.S.A.1953; e. g., Garner v. Stone, supra, n. 2 ; Kotrola v. Kotrola, supra, n. 2 ; Fox v. Doak, 78 N.M. 743, 438 P.2d 153 (1968) ; Ettinger v. Ettinger, supra, n. 2 ; Urzua v. Urzua, 67 N.M. 304, 355 P.2d 123 (1960) ; Tuttle v. Tuttle, 66 N.M. 134, 343 P.2d 838 (1959) ; Albright v. Albright, 45 N.M. 302, 115 P.2d 59 (1941).

bear out the proposition that these maxims have been loosely applied and that the real determinate in each case has been the particular facts, substantial evidence and whether the trial judge has abused his discretion. It is not surprising therefore that several of our decisions stating the rule have inserted minor variations, apparently intending to tailor them to the particular case.[4] The resulting murkiness in the status of child custody law has brought this case here for clarification of the guiding standards in this difficult and emotionally charged field.[5]

■ In a custody case in which the parents are opposed, the welfare and best interests of the minor child is the paramount consideration. Kotrola v. Kotrola, supra, n. 2. That standard also is determinative in an action between parents for the modification of a custodial decree. Kotrola v. Kotrola; Fox v. Doak, supra, n. 3. In such cases, a consideration of parental rights is unnecessary because both parties are on equal footing in the eyes of the law. § 32–1–4, N.M.S.A.1953;[6] Bassett v. Bassett, supra, n. 4. And though a specific

finding of unfitness on the part of the parent to be denied custody is not necessary in all such cases, parental unfitness would be a consideration in determining the welfare and best interest of the minor child. See Ettinger v. Ettinger, supra, n. 2.

■ In a custody dispute where the opposing parties are the natural parents, or one of them, versus grandparents or other persons having no permanent or legal right to custody of the minor child we hold the rule to be different. In such instances, the "parental right" doctrine is to be given prominent, though not controlling, consideration. It has long been the rule that "Parents have a natural and legal right to custody of their children. This right is prima facie and not an absolute right." Roberts v. Staples, supra, n. 1. This rule creates a presumption that the welfare and best interests of the minor child will best be served in the custody of the natural parents and casts the burden of proving the contrary on the non-parent. Focks v. Munger, supra. n. 1;[7] Wallin v. Wallin, 290 Minn. 261, 187 N.W.2d 627 (1971);

4. See e. g., Roberts v. Staples, supra, n. 1; Bassett v. Bassett, 56 N.M. 739, 250 P.2d 487 (1952); In Re Hogue, 41 N.M. 438, 70 P.2d 764 (1937); Pra v. Gherardini, 34 N.M. 587, 286 P. 828 (1930). Some statements in those opinions, read out of context, might indicate the rights of parents are not to be considered, but only the welfare of the child. We do not so read them but if such is their true meaning, we disapprove of them.

5. In the first custody dispute reported in New Mexico, Chief Justice Deavenport eloquently expressed the difficulty: "Probably there is no class of cases which exercise the judicial mind more feelingly than that where parents come before a judge, demanding restoration of their children to them upon writs of habeas corpus. It carries with it the force of nature's appeal to the heart, seconded by all the influences which the relation of parent and child so naturally suggests." Bustamento v. Analla, 1 N.M. 255, 256 (1857). See also, Guzman v. Avila, 58 N.M. 43, 265 P.2d 363 (1954).

6. "The parents of a minor shall have equal powers, rights and duties concerning the minor. The mother shall be as fully entitled

as the father to the custody, control and earnings of their minor child or children. In case the father and mother live apart the court may, for good reasons, award the custody and education of their minor child or children to either parent or to some other person."

7. In that case, Chief Justice Roberts stated the rule: " * * * the burden of showing that the welfare of the child would be best subserved by allowing it to remain with its adopted mother would be upon her, and not upon the natural mother to show that its best interests would be subserved by awarding her its custody. Any other rule would place the parent at a decided disadvantage, and would enable strangers to take and hold possession of children, unless the parents were able to establish that the children would be better cared for and raised by them than by the parties having them in custody. The presumption is that the child will be better cared for by its own parents than by strangers, and therefore it is incumbent upon the stranger to show to the contrary, if he would retain the custody of the child under this rule. [citations omitted]."

cf. Rules of Evidence, Rule 301 (§ 20-4-301, N.M.S.A.1953 (Supp.1973)).

In a case similar to this one, the Supreme Court of Minnesota proclaimed the applicable standard of proof:

> "[A]s against a third person, a natural [parent] would be entitled as a matter of law to custody of [the] minor child unless there has been established on the [parent's] part neglect, abandonment,[8] incapacity, moral delinquency, instability of character, or inability to furnish the child with needed care, [citations omitted] or unless it has been established that such custody otherwise would not be in the best welfare and interest of the child.[9] [citations omitted]." Wallin v. Wallin, supra at 266, 187 N.W.2d at 630 (1971).

The rule also requires that the trial court make express findings, if the natural parent is to be denied custody, not only that the parent is unfit,[10] but that the third person seeking to obtain or retain custody is fit [11] and the welfare and best interests of the child would best be served by giving custody to that third person. Of course, these findings must be supported by substantial evidence.

In this case, there are no express findings concerning the fitness of the parties and the evidence adduced at trial was meager. It is our opinion that the case should be reversed and remanded for a new proceeding to be held consistently with the presumption and burden of proof stated in this opinion.

It is so ordered.

McMANUS, C. J., and OMAN, J., concur.

---

8. Pra v. Gherardini, supra, n. 4, is a case where this showing would prevail. Though at the time of suit, the natural mother was found a fit and proper person morally, she was impliedly found unfit in the overall sense since she had effectively abandoned her child when he was but one month old and totally neglected him for nine years.

9. This court pointed out in In Re Hogue, supra, n. 4, that when considering the right to custody, " * * * " the welfare and best interest of the child is not measured altogether by material and economic factors—parental love and affection must find some place in the scheme and we all know this covers a multitude of weaknesses." The court also quoted the lower court judge who had stated: "Very few of us but that somebody could come along and say, 'I am in a whole lot better position to give that child educational advantages and training than the mother or father. * * * ' They might take some of your children. * * * They might have taken mine, because I know of men with better facilities who might be superior intellectually, morally, etc., to raise a child, but the ties are not the same." id. at 442, 70 P. 2d at 766. See also, Hill v. Patton, supra, n. 1. We couldn't agree more. In this case, Mrs. Scott relied heavily on the fact Mrs. Shorty was unemployed at the time of the hearing. We give little consideration to this fact. By regaining custody, the evidence indicates Mrs. Shorty will receive approximately $240.00 per month in social security payments for the children. Furthermore, there is no evidence in the record pertaining to Mrs. Scott's employment situation or her financial condition.

10. Irwin v. Irwin, supra, n. 1; Herbst v. Herbst, 211 Kan. 163, 505 P.2d 294 (1973); cf. §§ 32-1-2 and 6, N.M.S.A.1953 (Supp. 1973). We do not intend the term "unfit" to connote only some moral or character weakness, but use it in the broad sense of a finding that the presumption enunciated above has been overcome by satisfying the standard of proof we have adopted from Wallin v. Wallin, supra.

11. See Bell v. Odil, 60 N.M. 404, 292 P.2d 96 (1959).