641 P.2d 524

**Patricia Weston GREENE,
Plaintiff-Appellant,**

v.

**Matthew L. FRENCH and Frances French, Defendants-Appellees.**

No. 5339.

Court of Appeals of New Mexico.

Feb. 4, 1982.

W. W. Greig, Van Soelen & Greig, Clovis, for plaintiff-appellant.

Dan Buzzard, Clovis, Winston Roberts-Hohl, Singleton & Roberts-Hohl, Santa Fe, for defendants-appellees.

## OPINION

LOPEZ, Judge.

Patricia Weston Greene appeals the denial in district court of her motion to terminate guardianship of her two minor children. We reverse.

Patricia and Mack Weston are the natural parents of Faith Hassaletta Weston, born July 9, 1977, and Wesley Carroll Weston, born February 19, 1979. The Westons were divorced in April, 1979, and Patricia was awarded custody of the two children. In November, 1979, due to financial and ongoing health problems, Patricia asked her brother, Matthew French, and his wife to care for the children temporarily. Matthew French is a Captain in the Army. In her efforts to find a means to support herself and her children, Patricia decided to join the armed services. To be eligible for military service, Patricia was required to give legal custody of her children for the duration of her training. She asked the Frenches to become temporary guardians of the children. Patricia and the Frenches petitioned the district court to appoint the Frenches guardians. On February 27, 1980, the district court appointed the Frenches guardians of the two children.

Patricia married Daniel Greene, a sergeant in the Army, in December, 1979. She finally decided, with her husband's encouragement, not to enter military service, but to try and work out her health problems and make a stable home with her husband. Daniel Greene found out in April 1980, that he was going to be transferred and in August, 1980, he was transferred to Fort Huachuca, Arizona. The Greenes spent the next several months getting Patricia's health problems under control, setting up a home, and paying off debts. Patricia got a job as a waitress, which she has kept to the present.

Patricia has suffered from recurrent episodes of seizures in the past. During the period after her divorce, she was taking medication, including phenobarbitol and dilantin, to control the seizures. It was finally determined that a lower dosage of medication would bring the seizures under control.

In February, 1981, Patricia asked the Frenches to return the children, and they refused. She moved the court to modify the order of guardianship. After a hearing, the court entered a Decision denying the motion to terminate guardianship.

We note at the outset of our discussion that § 45-5-204(A), N.M.S.A.1978, provides that "[t]he court may appoint a guardian for an unmarried minor if all parental rights of custody have been terminated or suspended by circumstances or prior court order." When the district court ordered the guardianship, it made no disposition of Patricia's rights to custody of the children, nor did it grant custody to the Frenches. It simply ordered the Frenches to provide for the support, maintenance and medical care of the children.

Because the district court did not comply with the requirements of § 45-5-204, the judge at best set up only a quasi-guardianship, which made no determination of custody of the children. It is clear from the record that the attempted guardianship was established for the purpose of allowing Patricia to join the military, and that it was a temporary arrangement. There was no

legal determination at any time that Patricia's right to custody was terminated or suspended. Therefore, the order of guardianship does not control custody of the two children; it affects only the support, maintenance and medical care of the children.

As a result of this failure of the guardianship order to determine custody of the children, this case must be viewed as a custody dispute between a parent and non-parents who have no permanent or legal right to custody. In *Shorty v. Scott*, 87 N.M. 490, 535 P.2d 1341 (1975), the New Mexico Supreme Court considered a declaratory judgment action brought by a mother to regain custody of her two young children from their maternal grandmother. One of the issues discussed by the court in that opinion was the applicability of the "parental right" doctrine in a custody dispute between a parent and a non-parent who has no permanent or legal right to custody.

In such instances, the "parental right" doctrine is to be given prominent, though not controlling, consideration. It has long been the rule that "Parents have a natural and legal right to custody of their children. This right is prima facie and not an absolute right." ... This rule creates a presumption that the welfare and best interests of the minor child will best be served in the custody of the natural parents and casts the burden of proving the contrary on the non-parent. (citations omitted).

New Mexico appellate courts have not decided, see *Shorty v. Scott; Focks v. Munger*, 20 N.M. 335, 149 P. 300 (1915), nor do we decide in this case, whether the parental right doctrine would apply if the non-parent does have a permanent or legal right to custody. The case law from other jurisdictions is conflicting on this point. For example, compare *Wallin v. Wallin*, 290 Minn. 261, 187 N.W.2d 627 (1971) (cited as authority for the parental right doctrine in *Shorty v. Scott*), and *In re Estate and Guardianship of Davis*, 253 Cal.App.2d 754, 61 Cal.Rptr. 297 (Ct.App.1967).

■ The district court in this case erroneously refused to recognize the presumption in favor of Patricia. In effect, the court required Patricia to show, without benefit of a presumption that the children should be with a capable parent, that it was in the children's best interests to be returned to her custody, rather than to remain in the custody of the Frenches. The effect of allowing the presumption in favor of Patricia is to shift the burden to the Frenches to show that Patricia is unfit to care for her children. *Shorty v. Scott, Focks v. Munger.*

The trial court made the following findings:

6. The marriage of Patricia Weston Greene to Daniel Greene has not been stable in the past. She has a history of emotional immaturity and instability, and is unable to properly maintain and care for the children and to provide proper training for them and their emotional needs.

7. The children are receiving proper training and loving care and their needs are adequately met under the present guardianship. Frances French is a full-time housewife and devotes her whole time to the children. The natural mother of the children works a number of hours a day outside her home.

8. Termination of the guardianship is not in the best interest of the children. Their best interest will be served by having the children continue in the custody of Matthew L. French and Frances French, his wife under the guardianship.

■ The pertinent part of the findings in a determination of Patricia's fitness is that Patricia is unable at the present time properly to care for her children. Patricia claims that the finding is not based on substantial evidence. We agree.

■ This court has stated that findings used to determine present parental rights must be based on current evidence. See *State of New Mexico v. Natural Mother*, 634 P.2d 699 (Ct.App.1981). The evidence must show that the parent's ability or inability at the present time to take responsibility for her children; evidence pertaining to past behavior is irrelevant to a finding of

present fitness. A review of the evidence of Patricia's fitness presented in this case reveals that 1) there was no expert testimony presented on this issue, 2) the meager testimony that the children were dirty or were sick when with Patricia all refers to occasions in 1979, and 3) the opinions of relatives or Patricia's ex-husband that she wasn't capable of being a good parent were all based on observations from 1979 and before.

There was evidence that Patricia has made considerable changes in her life since 1979. Patricia's health problems have been controlled with appropriate medication, she has steady employment, she and her husband have gotten suitable housing for the children, and they have worked to pay off their debts. Given the fact that Patricia's circumstances have changed since 1979, there was no evidence to indicate that Patricia could not be a good parent at the present time.

The record contained testimony that Patricia had doubts about her marriage shortly after the marriage took place. (The fact that Patricia may have had doubts about a new marriage does not show that she cannot be a fit parent.) There was also testimony to indicate that the marriage is now stable.

The fact that Patricia has to work is also no indication of her fitness as a parent. The working mother is a common and often necessary phenomenon in our society, and need not reflect on the adequacy of the mother's parenting ability. There was not substantial evidence to support the trial court's finding as to Patricia's fitness to be a good parent today.

The district court found that "[t]ermination of the guardianship is not in the best interest of the children." We have already pointed out that the attempted guardianship ordered by the court does not govern custody of the children. However, the best interest of the children is always a fundamental consideration in the determination of custody, no matter what the context. In this case, based on the presumption that it is in the children's best interest to be with their mother, and the lack of support for a finding that she would not be a fit parent, it is in the children's best interest to be returned to their mother.

The decision of the district court is reversed, and Faith Hassalletta Weston and Wesley Carroll Weston are returned to the custody of their mother, Patricia Weston Greene. Appellant's costs to be paid by appellee.

SUTIN and NEAL, JJ., concur.