794 P.2d 1205

**Steve BRITO, Petitioner–Appellee,**

v.

**Judy BRITO, Respondent–Appellant.**

**No. 11386.**

Court of Appeals of New Mexico.

May 31, 1990.

Richard Shapiro, Santa Fe, for petitioner-appellee.

Elizabeth A. Musselman, Leverick and Musselman, P.C., Taos, for respondent-appellant.

## OPINION

MINZNER, Judge.

Mother appeals a judgment awarding father physical custody of the parties' minor child. Mother raises the following issues on appeal: (1) the court's findings are not supported by substantial evidence; (2) the court's conclusions of law are not supported by the findings of fact; and (3) the court did not properly consider the factors required by the statute in awarding custody. We affirm.

The parties were divorced in 1985. There is one minor child of the marriage. A marital settlement agreement, incorporated into the final decree, granted the parties joint legal custody of the child. It also outlined a physical custody schedule through 1986. The parties later stipulated to an order amending the final decree, specifying the time the child would spend with each parent through August 10, 1988. The order further required the parties to "enter into negotiations relating to future custodial arrangements of the child." Mother and father were unable to agree to a physical custody schedule. After the physical custody order expired on August 10, 1988, mother filed a motion for determination of

custody. A hearing was held in September 1988, at which time the child was five years old. Mother, father, and the child's paternal aunt testified. The trial court also talked with the child in chambers.

Father works at the state penitentiary in Santa Fe, and maintains a residence in that city. During the times father has had physical custody of the child, she has lived with her paternal aunt, uncle, and cousins in Taos. Although the parties dispute exactly how much time father spends with the child in Taos, there is no dispute that the child's aunt is her primary day-to-day caretaker. There is also no dispute that the child is doing well in her aunt's care. Father testified that he spends three to four nights per week with the child in Taos, either at his sister's home or nearby at his mother's residence.

Mother is a sergeant in the Marine Corps. She is currently stationed for a three-year tour in Maryland. Since the child's birth she has been stationed in Okinawa, the Philippines, California, Utah, North Carolina, and Maryland. Mother testified that she plans to remain in the Marine Corps for at least twenty years. Mother testified that if she was granted physical custody, mother's younger sister, who lives with her, would provide child care.

The child's paternal aunt testified that she independently makes the day-to-day decisions concerning the child's care, and that she later informs father of those decisions. She also tells father what major decisions should be made on the child's behalf. The child's aunt stated that she and the child's mother have a good relationship and good communication.

In its decision, the trial court granted father primary physical custody of the child. The court also ordered that the child is to primarily reside with her aunt and uncle, and that father is to spend three to four nights per week with the child in Taos. The trial court found that the child currently needs stability and that she is comfortable and stable with her present living environment. The trial court also found that father has provided for the child's day-to-day care by providing money for her support, by arranging for her aunt and uncle to care for her, and by spending three to four days per week with her. The court found that the child's present living situation is in her best interests, and that as the child grows older, the parties should reassess the arrangement. Mother was granted liberal visitation, including portions of the child's school vacations and two months in the summer.

Although the parties have been divorced for some time, we treat the trial court's order as an initial determination of custody rather than a modification of a custody order, given that the only custody order made expired in August 1988. A determination of custody will not be overturned on appeal absent a manifest abuse of the trial court's discretion. *See Creusere v. Creusere*, 98 N.M. 788, 653 P.2d 164 (1982).

Mother raises issues regarding whether the trial court's decision is supported by substantial evidence. However, we first examine the central question—whether it is proper, as a matter of law, for the trial court to award physical custody to a parent with whom the child does not primarily reside.

Initial determinations of custody are governed by NMSA 1978, Sections 40-4-9 (standards for the determination of child custody) and 40-4-9.1 (standards for the determination of joint custody) (Repl.Pamp. 1989). Pursuant to Section 40-4-9, the trial court must determine custody in accordance with the best interests of the child, taking into consideration the following factors: (1) the wishes of the child's parent or parents; (2) the wishes of the child; (3) the interaction and interrelationship of the child with her parents, her siblings, and any other person who may significantly affect the child's best interest; (4) the child's adjustment to her home, school, and community; and (5) the mental and physical health of all individuals involved. Pursuant to Section 40-4-9.1, the legislature has created a legal presumption that joint custody is in the best interests of a child, but joint custody is defined as the joint

authority to make major decisions in the child's best interests and not an equal division of time or responsibility. *See* § 40–4–9.1(L)(2), (3); B. Shapiro, *Family Law,* 17 N.M.L.Rev. 291, 297–98 (1987).

■ Pursuant to Section 40–4–9.1(L)(2), the term "custody" means the authority and responsibility to make major decisions in the child's life, including where the child is to reside. The choice of residence for the child appears to be a major decision that comes within the definition of "legal" custody, rather than a decision to be made by the person to whom physical custody has been given. *See* B. Shapiro, *supra,* at 298 (statute as amended in 1986 refers to what had previously been termed joint "legal" custody); *cf. In re Jacinta M.,* 107 N.M. 769, 764 P.2d 1327 (Ct.App.1988) (under the Children's Code, legal custody is a status created by court order that vests in a person or agency the right to determine where and with whom a child will live).

■ None of the above criteria precludes the trial court, given the particularly unusual facts in the present case, from finding that it is in the child's best interests for her to primarily reside with her aunt and uncle and for father to spend three to four nights per week with her. Mother argues that such an order violates the parental preference doctrine. In *Greene v. French,* 97 N.M. 493, 641 P.2d 524 (Ct.App.1982), we held that in a custody contest between a parent and a non-parent who has no legal right to custody, the natural parent has preference over a non-parent unless the parent is shown to be unfit for some reason. Citing the supreme court's earlier decision of *Shorty v. Scott,* 87 N.M. 490, 535 P.2d 1341 (1975), we stated in *Greene* that the parental rights doctrine is to be given prominent, but not controlling consideration in making custody decisions. In essence, the doctrine creates a presumption that it is in the child's best interests to be in the custody of the natural parents, and casts the burden of proving the contrary on a non-parent requesting custody. *See id.,* 97 N.M. at 495, 641 P.2d at 526. We find *Greene* to be inapplicable in the present case. As father argues, the custody dispute here is between two parents, and does not involve a non-parent; therefore, the parental preference doctrine as stated in *Greene* and other similar cases does not address the facts presented here.

Mother additionally argues that by giving father physical custody of the child, the court has actually given "constructive" custody to the child's aunt and uncle. Mother relies on *Bell v. Odil,* 60 N.M. 404, 292 P.2d 96 (1956), to support her contention. In *Bell,* the trial court awarded custody of the parties' minor children to the children's maternal grandparents. The grandparents were not parties to the action, nor had they requested custody of the children. The mother in *Bell* argued that the trial court's action could be affirmed because by giving the maternal grandparents custody, the court was in essence giving "constructive" custody to the mother. The supreme court rejected this argument, stating that the fact that the mother would care for the children did not support an award of custody to persons who were not parties to the action, or who had not produced evidence of their fitness to care for the children. Mother argues that *Bell* is similar to the present case because the court granted the child's aunt and uncle "constructive" custody, father did not wish to have physical custody, and there was no evidence admitted supporting his fitness to care for the child.

Mother's reliance on *Bell* is misplaced. The supreme court's concern in *Bell* was that a non-party had been given custody. It did not specifically address the issue of constructive custody, other than to reject it as a justification for the trial court's granting of custody to a non-party. We find a Pennsylvania decision to be analogous to the present case. In *Porch v. Porch,* 327 Pa.Super. 346, 475 A.2d 831 (1984), custody of the children was granted to the father. The children resided with their paternal grandparents, who lived next door to the father's residence. The father worked an erratic schedule and found it difficult to care for the children on his own. On appeal, the court upheld the trial court's determination that it was in the best interests

of the children for them to remain in their grandparents' care. The court rejected the mother's argument that the custody dispute between her and the father should be redefined as a dispute between the non-custodial parent and other relatives. The court stated that the grandparents were not granted custody because the father had not surrendered control of the children to the grandparents. Therefore, the court concluded, the dispute was between two parents and did not involve a third party.

■ Section 40–4–9.1(F) requires a court to adopt a parenting plan that is in the best interests of the child. Although residence is not specifically listed in the items that the parenting plan must cover, Subsection 40–4–9.1(F)(5) provides that the plan may include "other statements regarding the welfare of the child or designed to clarify and facilitate parenting under joint custody arrangements." The statute also provides that when necessary aspects of the parenting plan are contested, the court may combine or revise the plans submitted by the parties as it deems necessary in the child's best interests. Thus, the statute allows a trial court to decide issues as to which the parties cannot agree. In the present case, the parties could not agree on the residence of the child, and mother petitioned the court for a determination of physical custody. Mother requested the court to award joint legal custody, but award physical custody to mother and reasonable visitation rights to father. Father responded by requesting joint legal custody, but an award of physical custody to him and reasonable visitation rights to mother. The record indicates that the parties attempted mediation, but the mediator concluded the issues were "not mediatable." Under these circumstances, the trial court was authorized to resolve the question of physical custody in the best interests of the child. *See* § 40–4–9.1(F). There was significant evidence in this case that the child's best interests would be served by her remaining in her aunt's home. We conclude that the court did not err in awarding father physical custody, but requiring him to maintain the child's present residence with her aunt.

In the present case, father has enlisted the help of extended family members to assist in raising the parties' daughter. Father testified that he preferred to have his family take care of the child because he had not found adequate child care in Santa Fe. The trial court ordered father to spend three to four days per week with the child in Taos. The trial court also ordered that father and the child's caretakers must consult with mother about all decisions concerning the child, and that they must communicate with mother in advance regarding any significant decision. Finally, the trial court ordered that the residence arrangement should be reassessed when the child is older. We believe the trial court could, in its discretion, decide to maintain the child's current living situation because it is best for the child to remain in a stable environment at the present time.

■ Finally, we address mother's argument that certain findings of fact and conclusions of law made by the trial court were not supported by substantial evidence. Findings of fact that are supported by substantial evidence will not be disturbed on appeal. *See Tome Land & Improvement Co. v. Silva,* 83 N.M. 549, 494 P.2d 962 (1972). If the evidence shows that the trial court's decision is based on reasonable, substantial, and probative evidence, so that it can be said that a reasonable person might have reached the same conclusion, the trial court's decision should be affirmed. *Id.* We find that the court's decision is supported by substantial evidence in the present case.

■ Mother contests the trial court's finding that father has provided for the day-to-day concerns of the child. The court made this finding based on father obtaining assistance in the child's care from his extended family. The trial court could, in its discretion, make this finding based on the testimony presented at the hearing. Father testified that he would have had the child in Santa Fe with him if he had previously found suitable day care for her. However, he made the decision that it would be preferable for the child to be cared for by relatives while he is working.

Such evidence is sufficient to support the trial court's finding.

■ Mother argues that the trial court's finding that she has little control over her duty stations is not supported by substantial evidence because mother did not testify as such. In addition, mother challenges the court's implications in its findings that her military employment was unstable and detrimental to the child. We reject these arguments. Evidence presented at the hearing indicated that mother had been stationed at six different locations in five years. The trial court could make a reasonable inference from such evidence that mother has little control over her duty stations. The trial court could also reasonably determine that it was in the child's best interests to remain in the same living environment, school, and community at her young age rather than move continually with mother. We disagree with mother's contention that the trial court's award of physical custody to father requires this court to find that all members of the Armed Forces are inherently unfit parents, and that such parents should never have physical custody of their children. The issue is simply one of the trial court deciding, in its discretion, that in this particular factual scenario it was preferable for the child to remain in the environment she knew.

Mother's reliance on *Fitzsimmons v. Fitzsimmons,* 104 N.M. 420, 722 P.2d 671 (Ct.App.1986), is misplaced. In *Fitzsimmons,* we stated that a "mother's employment should not be accorded a different or negative effect when compared with a father's employment." *Id.* at 424, 722 P.2d at 675. Here, the record does not indicate that the trial court awarded father physical custody because it accorded the mother's employment outside the home a different effect than it accorded the father's employment. *See generally* Annot., *Mother's Status as "Working Mother" as Factor in Awarding Child Custody,* 62 A.L.R.4th 259 (1988). Rather, the trial court apparently found that mother's employment situation necessarily required frequent changes of residence, which created a residential arrangement for the child that was less desirable than the available present alternatives. The court concluded that both parents were fit and proper persons to exercise joint legal custody and that the "finding of best interests is based upon the child's present living condition and her age." The court indicated that "[a]s the child grows, the parties should reassess this arrangement. At some point the mother's living conditions and the child's needs may prompt a change of custody."

■ Finally, mother contends that there was insufficient evidence to support the findings that father spends 35 to 45 percent of his time with the child in Taos, and that father is a fit and proper parent to be granted physical custody. Father testified that he spends his two days off per week with his daughter, and usually two other nights, for a total of four nights a week. The trial court could calculate this amount to be between 35 and 45 percent of the week. Two full days of the week constitutes forty-eight hours. Two other nights per week could reasonably be calculated as twelve hours each. Statistically, this accounts for approximately 42 percent of the hours of the week. Therefore, the court's findings on this point are not unreasonable.

The trial court's decision was within its discretionary power to evaluate the child's best interests and resolve the dispute that the parties submitted to the court for resolution. The child appeared healthy and content in her current environment, and thus there was substantial evidence to support a determination that her present situation was the best available alternative. The trial court did not err in granting primary physical custody of the child to father on the evidence presented. The judgment is affirmed.

IT IS SO ORDERED.

HARTZ and CHAVEZ, JJ., concur.