**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number: 2010-NMCA-083

Filing Date:  July 28, 2010

Docket No. 29,553

IN THE MATTER OF THE GUARDIANSHIP
OF KAITLYNN ALEXIS WARE, a minor child,

JEAMIE BURRIS-AWALT,

Petitioner-Appellee,

v.

EUGENE KNOWLES,

Respondent-Appellant.

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
Lisa C. Schultz, District Judge

Melissa J. Reeves, P.C., Attorney at Law
Melissa J. Reeves
Las Cruces, NM

for Appellee

Keithly & English, P.C.
Shane A. English
Anthony, NM

for Appellant

## OPINION

**BUSTAMANTE, Judge.**

**{1}**     This is an appeal from the judgment of the district court denying Respondent's request to set aside an order appointing guardian.  We discuss:  (1) whether the district court's judgment was a final appealable order; (2) whether the procedural provisions of the Kinship Guardianship Act (KGA), NMSA 1978, §§ 40-10B-1 to -15 (2001), were complied

**1**

with prior to entry of the order appointing guardian; and (3) procedures on remand. Finding no compliance with the KGA, we reverse and remand with instructions.

{2}     The parties also briefed whether the district court applied the correct legal standard in reviewing Respondent's motion to set aside guardianship and whether there was sufficient evidence to support the district court's decision. Given our resolution of the case we do not address these issues.

**BACKGROUND**

{3}     Kaitlynne W. (Child) was born to Tierra W. (Mother) and Eugene K. (Father) on January 26, 2001. Child's maternal grandmother (Grandmother) filed a petition seeking guardianship of Child on November 26, 2002. While Grandmother's petition was pending, Mother and Father requested that Child, who had been residing with Grandmother in Oklahoma, be returned to their custody. The district court agreed and ordered Grandmother to return Child to Mother and Father in New Mexico pending a final hearing on the matter.

{4}     Grandmother's petition seeking guardianship was never ruled upon, as the matter was resolved when Mother, Father, and Grandmother instead reached a settlement agreement on May 8, 2003. The district court approved the settlement and ordered that it be implemented. Pursuant to the settlement agreement, Mother and Father were to remain custodians and primary caretakers of Child, while Grandmother would have reasonable visitation rights. A parenting coordinator was appointed in accord with the settlement agreement. Shortly after the settlement agreement, Mother and Father separated and Mother increasingly began to leave Child in the care of Grandmother, in violation of the settlement agreement. Father, on the other hand, continued to maintain parental responsibility and time-sharing with Child during this time.

{5}     On September 7, 2006, the district court entered an order appointing guardian naming Grandmother as guardian of Child (2006 Order). The order also reserved "liberal" visitation rights for Father, but limited Mother's visitation rights to two weekends per month. There was no new petition for guardianship filed prior to entry of the 2006 Order, nor was there notice to the parties or a hearing on the matter, as required by the KGA. Sections 40-10B-5 to -6. The 2006 Order purports to be based on the recommendations of the parenting coordinator. However, because it was summer and school was out, the parenting coordinator had in fact recommended that Child reside with Father during the week and have only weekend visitations with Grandmother. It should also be noted that neither the settlement agreement, nor the recommendations of the guardian ad litem discuss appointment of a guardian for Child.

{6}     Father filed a motion to set aside guardianship, which was denied from the bench on April 1, 2009, following a hearing by the district court. The district court issued a written order on April 3, 2009, which contained a list of findings reflecting most but not all of its oral April 1, 2009, decision. Grandmother argues that the written order was not final

because it did not contain all of the same findings as announced by the district court at the hearing. Curiously, though the district court requested proposed findings of fact and conclusions of law from the parties, it entered its order before the parties were scheduled to file their documents. The record proper seems to reflect that the district court did not reject or accept any of the requested findings and conclusions filed by the parties.

## DISCUSSION

### Finality

{7}     Grandmother argues that the April 3, 2009 order appealed from is not a final, appealable order. The basis for Grandmother's argument is that the district court made several oral findings during a hearing the April 1, 2009, some of which were not subsequently reduced to writing and included in the April 3, 2009 order.

{8}     Typically, a party to a civil action may appeal only final orders or judgments. NMSA 1978, § 39-3-2 (1966). A district court's decision is generally not final for the purposes of appeal if it contains neither "decretal language nor provisions directing the entry of judgment." *Khalsa v. Levinson*, 1998-NMCA-110, ¶ 2, 125 N.M. 680, 964 P.2d 844. Additionally, the general rule is that "an order or judgment is not considered final unless all issues of law and fact have been determined and the case disposed of by the [district] court to the fullest extent possible." *Kelly Inn No. 102, Inc. v. Kapnison*, 113 N.M. 231, 236, 824 P.2d 1033, 1038 (1992) (internal quotation marks and citation omitted). This policy is grounded in the desire to discourage "piecemeal appeals" that frustrate the efficiency of the judicial process. *See Banquest/First Nat'l Bank v. LMT, Inc.*, 105 N.M. 583, 585, 734 P.2d 1266, 1268 (1987) (discussing the policy against piecemeal appeals).

{9}     However, New Mexico has recognized a need to balance judicial economy with the "equally important policy of facilitating meaningful appellate review." *Kelly Inn No. 102, Inc.*, 113 N.M. at 240, 824 P.2d at 1042. Placing too much emphasis on judicial economy above all else poses a "danger of denying justice by delay." *Dickinson v. Petroleum Conversion Corp.*, 338 U.S. 507, 511 (1950). Thus, New Mexico courts have acknowledged that certain circumstances counsel deviation from the general rule, and "the term 'finality' is to be given a practical, rather than a technical, construction." *Kelly Inn No. 102, Inc.*, 113 N.M. at 236, 824 P.2d at 1038 (citation omitted).

{10}     Grandmother's argument also touches on a common concern in finality analysis, which is that allowing an appeal based on the notion of "practical finality" may render the appellate record incomplete. This, however, is not an issue here. In *Peterson v. Peterson*, 98 N.M. 744, 652 P.2d 1195 (1982), the Court recognized that while all of a district court's findings of fact and conclusions of law should typically be reduced to writing and entered along with the final order, failure to do so is not fatal if the findings and conclusions are part of the transcript on appeal. *Id.* at 746, 652 P.2d at 1197. In such situations, "little would be

accomplished, other than incurring additional delay and further expense." *Id.* Here, the appellate record is sufficient to allow meaningful review.

**{11}** While the April 3, 2009 order is certainly flawed in some ways, it is sufficiently final for the purposes of appeal. First, while the order lacks decretal language—a factor that can sometimes be indicative of a non-final order—the absence of this language is not inherently fatal. Grandmother has asked this Court to remand the case for entry of the additional findings and conclusions that were not included in the April 3, 2009 order. A remand, however, would frustrate rather than further judicial efficiency. While certain administrative loose ends remain unresolved (the replacement of the parenting coordinator, the specifics of Father's visitation, etc.), the purpose and effect of the April 3, 2009 order is to deny Father's request to have the guardianship set aside.

**{12}** Grandmother relies on *State v. Morris*, 69 N.M. 89, 364 P.2d 348 (1961), to bolster her argument that the April 3, 2009 order was non-final and non-appealable. In *Morris*, the court noted that "[a]n oral ruling by the [district] judge is not a final judgment." *Id.* at 91, 364 P.2d at 349. However, *Morris* is distinguishable from the case at hand. *Morris* involved a criminal case, and the appeal in that case was taken solely from an oral statement made by the Court, which was part of the stenographic record. *Id.* at 90, 364 P.2d at 348. No written order or judgment was entered by the court. *Id.* In fact, the Court specifically stated that it was not imposing a sentence at that time. *Id.* Unlike *Morris*, the district court in this case did enter a written order on April 3, 2009, denying Father's motion to set aside guardianship. The April 3, 2009 order further contains a list of findings upon which it is based. The fact that the district court made some additional findings and conclusions during the April 1, 2009 hearing that are not included in the April 3, 2009 order, does not render the written order non-final.

**{13}** Finally, the delay caused by remanding this case would substantially affect Father's rights, including his right to a review of whether his custody should have been removed, and would only serve to prolong a case that is already marked by significant delay. In *State v. Durant*, 2000-NMCA-066, ¶ 8, 129 N.M. 345, 7 P.3d 495, this Court announced what it termed the "'sufficiently aggrieved' rationale for the finality rule." Under the sufficiently aggrieved rationale, a court should apply a practical construction of finality if the consequences of an order "are sufficiently severe that the aggrieved party should be granted a right to appeal to alleviate hardship that would otherwise accrue if the appeal were delayed." *Id.*; *see* § 39-3-2 (stating that an aggrieved party may appeal an "entry of judgment which affects substantial rights"). An order denying a parent the ability to set aside a guardianship and resume parenting responsibility for his child impacts fundamental rights. The gravity of this consequence is only compounded by the fact that this case has already undergone a series of unfortunate delays. Further prolonging the resolution of this case by remanding it to enter additional findings and conclusions simply cannot be justified.

**{14}** Thus, we conclude the April 3, 2009 order denying Father's motion to set aside guardianship is a final, appealable order, and is properly before this Court. We now turn to

the issue of whether the proper procedures were followed, as prescribed by the KGA, prior to entry of the September 7, 2006 order appointing guardian.

## THE KINSHIP GUARDIANSHIP ACT AND DUE PROCESS

### Procedural Due Process

**{15}**    Father argues that his due process rights were violated when the 2006 Order  was entered by the district court because of the failure to follow any of the procedural requirements of the KGA.  "The question of whether an individual was afforded due process is a question of law that we review de novo." *State ex rel. Children, Youth & Families Dep't v. Mafin M.*, 2003-NMSC-015, ¶ 17, 133 N.M. 827, 70 P.3d 1266.

**{16}**    In this case, there are statutory provisions which provide a certain level of due process that must be followed.  The KGA provides that a kinship caregiver may file a petition seeking to be appointed guardian of a minor child.  Section 40-10B-5.  The KGA requires the court to schedule a hearing on the petition, Section 40-10B-6(A), and the petitioner must serve notice of the hearing, along with the petition, upon all concerned parties, including the parents of the minor child.  Section 40-10B-6(B).  The involved parties have a statutory right to file a response to the petition.  Section 40-10B-6(D).

**{17}**    In this case, none of the required procedures were followed.  While Grandmother did file a petition for guardianship in November 2002 that complied with these provisions, the matter was resolved when the parties reached a settlement agreement on May 8, 2003.  No new petition for guardianship was filed with the district court prior to entry of the 2006 Order.  Instead, the 2006 Order was prepared by Grandmother's attorney and signed by the district court judge in an ex parte proceeding.  No notice was ever given to Mother or Father, and no hearing was scheduled or held on the matter.  Although the district court later recognized that a failure of process may have occurred, the court did not seem to appreciate the significance of this failure, calling it merely a "technical violation."  We fundamentally disagree with the district court's assessment of the gravity of the due process violation which occurred here.  Failure to comply with the KGA stripped Father of his statutory and constitutional right to file a response and of his constitutional right to be heard on a matter involving his parental rights.  *See* N.M. Const. art. II, § 18.

**{18}**    Considering that neither the recommendations of the parenting coordinator, nor the guardian ad litem made any mention of the need to appoint a guardian, Father had no reason to anticipate that a guardian was going to be summarily appointed, or that he would need to take any action to prevent this from happening.  Furthermore, even though Mother violated the settlement agreement, the agreement made no mention of automatic appointment of a guardian in the case of a breach of condition.  In fact, the agreement stated that "the failure or fault of one Parent shall not be deemed the failure or fault of the other unless it is shown that the Parents acted in concert."

**{19}** Entry of the 2006 Order, in the absence of appropriate notice and an opportunity to be heard, was simply in violation of Father's due process rights. This by itself argues in favor of reversal. There is another practical reason which impels us to reverse. It is likely that the existence of the improperly entered order improperly shifted the burden of proof in the proceedings below. Grandmother was never required to meet the burden of proof prescribed by the KGA for establishing a guardianship, nor did she make any evidentiary showing in support of the guardianship. Once the guardianship had been put in place, and the initial impropriety of the entry brushed aside as a "technicality," the burden improperly shifted to Father to establish that the guardianship should be set aside as a factual matter. This approach shifted the normal burden of proof improperly. For these reasons, the 2006 Order appointing guardian must be reversed.

## REMAND

**{20}** Reversal of the district court "does not necessarily mandate a return of custody to" Father. *In re Guardianship of Ashleigh R.*, 2002-NMCA-103, ¶ 13, 132 N.M. 772, 55 P.3d 984. While the guardianship was improperly imposed, we cannot ignore the situation on the ground. The record reveals that Child has lived primarily with Grandmother for a number of years. Grandmother has provided a reasonably stable environment and she and Child are clearly bonded. It does not require any particular expertise to recognize that a sudden disruption of the status quo would have negative consequences for Child.

**{21}** On remand, the district court's first task should be to consider interim custody arrangements in light of all extant circumstances. *In re Guardianship of Sabrina Mae D.*, 114 N.M. 133, 139, 835 P.2d 849, 855 (Ct. App. 1992) ("[T]he court may award or continue custody in third parties without issuing letters of guardianship."). Interim custody arrangements should include measures aimed at re-establishing Child and Father's relationship to the extent possible. *See In re Adoption of J.J.B.*, 119 N.M. 638, 654, 894 P.2d 994, 1010 (1995).

## CONCLUSION

**{22}** We reverse the denial by the district court of Father's motion to set aside the guardianship order entered September 7, 2006, and remand for further proceedings not inconsistent with this opinion.

**{23}  IT IS SO ORDERED.**

MICHAEL D. BUSTAMANTE, Judge

**WE CONCUR:**

**MICHAEL E. VIGIL, Judge**

**TIMOTHY L. GARCIA, Judge**

**Topic Index for *Burris-Awalt v. Knowles,* Docket No. 29,553**

**AE**          **APPEAL AND ERROR**
AE-RM          Remand

**CD**          **CHILDREN**
CD-KG          Kinship Guardianship

**CP**          **CIVIL PROCEDURE**
CP-FO          Final Order

**CT**          **CONSTITUTIONAL LAW**
CT-DP          Due Process

**DR**          **DOMESTIC RELATIONS**
DR-GR          Grandparents
DR-VR          Visitation Rights