This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-40700

**PERLA A. MONTES,**

Petitioner-Appellant,

v.

**LUIS URIEL MANRIQUEZ,**

Respondent-Appellee.

**APPEAL FROM THE DISTRICT COURT OF LEA COUNTY**
**Michael H. Stone, District Court Judge**

Law Office of Ross R. Bettis
Ross R. Bettis
Hobbs, NM

for Appellant

The Sawyers Law Group, LLC
Melissa A. Sawyers
Hobbs, NM

for Appellee

### MEMORANDUM OPINION

**YOHALEM, Judge.**

**{1}** In this divorce case, Petitioner Perla A. Montes (Mother) appeals from the district court's initial custody determination and the parenting plan concerning the parties' two children (collectively, Children). Mother filed for divorce from Respondent Luis Uriel Manriquez (Father) in October 2021. Because custody of Children was contested, the district court appointed a guardian ad litem (GAL) in January 2022, under Rule 1-053.3 NMRA, to conduct an investigation and to provide the court with recommendations on custody and a parenting plan that would be in Children's best interest. The GAL

recommended that the parties share joint legal custody of Children, with Father having primary physical custody and Mother having substantial periods of responsibility for Children's care. In August 2022, the district court held an evidentiary hearing to consider the parties' objections to the GAL's recommendations. Both parents and the GAL testified at that hearing and the GAL's report and recommendations were introduced into evidence. At the conclusion of the hearing, the district court made oral findings, explaining the court's reasons for adopting the GAL's recommendations, and issued a written decree of dissolution that included a parenting plan and child support. Mother appeals. She challenges the district court's award of primary physical custody of Children to Father, arguing that (1) the district court erred in failing to make particularized findings on each of the factors the Legislature has found to be relevant to Children's best interests in NMSA 1978, Sections 40-4-9(A) (1977) and -9.1(B) (1999); (2) the district court's finding that it was in Children's best interest that Father have primary physical custody of Children was not supported by substantial evidence in the record at the hearing; and (3) the court abused its discretion in adopting the GAL's recommendations, with only a few changes, rather than preparing its own findings of facts and conclusions. Not persuaded by Mother's arguments, we affirm.

**BACKGROUND**

**{2}**     Mother and Father have two children, a son and a daughter. At the time of the hearing in August 2022, their son was six years old and had started school, and their daughter was five years old and about to begin kindergarten. The parties were married in late June 2017. Mother and Father relocated several times between Hobbs, New Mexico, and Odessa, Texas both before their marriage and in the year following their marriage, from April 2016 until they separated in May 2018. When they separated, Father stayed in Odessa where the couple had been living with Children prior to the separation. Mother and Children moved to Mother's parents' home in Hobbs, which is an hour and a half drive from Odessa.

**{3}**     Mother's minor half-brother lived in the home, along with Mother's parents, Mother, and Children. In September 2021, Father reported to the police that his daughter had disclosed that Mother's half-brother had sexually abused her. The Children, Youth, and Families Department (CYFD) investigated and substantiated the allegation. Finding that Mother had delayed reporting the incident for six months, while she and Children continued to live in her parents' home with her half-brother, CYFD issued a temporary custody order placing Children in Father's home in Odessa.

**{4}**     Mother moved out of her parents' home shortly after Children were placed in Father's temporary custody. She filed for divorce on October 15, 2021, and sought visitation with Children by motion. After a hearing on Mother's motion, the district court issued an order outlining an interim visitation schedule in which Children stayed with Mother in Hobbs every other weekend. Mother was forbidden to allow any contact between Children and Mother's half-brother. The district court appointed a GAL, pursuant to Rule 1-053.3, to assist the court in determining Children's best interests for purposes of a permanent custody order and parenting plan. On July 28, 2022, the GAL

submitted his recommendation that the district court award the parties joint legal custody of Children, with Father having primary physical custody and Mother having substantial periods of responsibility on weekends, school holidays, and during school vacations.

{5}     The merits hearing occurred on August 8, 2022. Mother, Father, and the GAL testified. The district court admitted into evidence the GAL's report of his investigation, which included interviews with both parents and observations of Children. According to Father, son was excelling academically in school and daughter was going to start school soon. Because Father was working forty to sixty hours a week as a flatbed truck driver, he shared caregiving responsibilities with his mother (paternal grandmother), who lives in Odessa, twenty minutes from him. Father's son would take the bus to paternal grandmother's residence after school, where Children remained until Father picked them up after work, and Father and Children stayed there overnight once or twice a week.

{6}     Mother had begun working in April 2022 for a sports bar in Carlsbad, New Mexico, doing advertising and marketing. That job required her to commute from her home in Hobbs, which was approximately an hour away, two to three times a week. She worked remotely from home on the other days. Mother testified that she had not provided child support to Father even though Children were in his primary physical custody. Mother admitted on cross-examination that she received government benefits on Children's behalf, even though they were no longer in her custody.

{7}     The GAL testified positively about both Mother and Father, stating that he likely would have recommended equally shared physical custody if Mother and Father lived in the same city. With both Children in school and the drive between Odessa and Hobbs nearly an hour and a half, the GAL did not find fifty-fifty physical custody to be in Children's best interest. The GAL explained that his recommendation to award primary physical custody to Father rather than Mother, was influenced by Mother's response to daughter's sexual abuse. Mother knew of the abuse in March 2021, but did not report it to CYFD until September 2021 and did not move out of her parents' home until after CYFD removed Children to Father's home. Mother relocated to Roswell, New Mexico for four months, and then moved to her own apartment in Hobbs, where she was living at the time of the hearing.

{8}     The GAL testified that he had drafted his recommendations believing that Father did not know about daughter's abuse until late August 2021. Father's testimony at the hearing revealed that he had been told about the abuse by Mother in March 2021, and had delayed reporting the abuse waiting for Mother to act. The GAL was concerned about Father's delay, admitting that this new information made his recommendation as to which parent would have primary physical custody a "closer call."

{9}     At the conclusion of the three-hour long hearing, the district court gave a lengthy explanation of its decision to adopt the GAL's recommendations as to legal and physical custody, granting parents joint legal custody of Children, and awarding primary physical

custody to Father. The district court found that both Mother and Father "care greatly" for Children, emphasizing that primary physical custody was a close call. The court suggested that if both parents lived in the same city, it would likely have awarded joint legal and equal physical custody and indicated a willingness to reconsider the custody arrangement if parents' locations changed.

{10}     The district court's oral ruling described the following facts as dispositive of the court's custody determination: (1) "Mother allowed the alleged sexual predator victim to remain in the home with no report," and even though Father also waited several months to report the abuse, the court credited Father's testimony that he waited, expecting Mother and her family would act; and (2) "[Mother's] untruthfulness . . . [about] where Children resided" for the purpose of continuing to receive government assistance on behalf of Children even though they were not in her custody.

{11}     The district court found that both Mother and Father would require assistance from grandparents in caring for Children while they work—Mother because she commuted from her home in Hobbs to her job in Carlsbad several times a week and Father because he worked long hours. Mother presented testimony at the hearing that Children slept on the floor in their paternal grandparents' home during the week, and claimed that Mother's situation with help from her parents was superior to Father's, and in Children's best interest because Mother had an apartment where each child has their own room, and her job was flexible and allowed Children to be at home when they were not in school. The district court indicated it weighed both parents' circumstances equally as to the arrangements they made for substitute care.

{12}     The district court added to the parenting plan a requirement that Children receive all vaccinations because (1) Mother and Father could not reach agreement, (2) Children would attend public school, and (3) there was no reason to believe vaccinations would harm Children. The district court's ruling was memorialized in the decree of dissolution, which is the final order from which Mother appeals.

## DISCUSSION

### Standard of Review

{13}     "We review a district court's child custody determination for abuse of discretion." *Hough v. Brooks*, 2017-NMCA-050, ¶ 18, 399 P.3d 387; *see Ridgway v. Ridgway*, 1980-NMSC-055, ¶ 10, 94 N.M. 345, 610 P.2d 749 ("The determination of the trial judge, who saw the parties, observed their demeanor and heard the testimony will not be overturned absent a manifest abuse of discretion."). "An abuse of discretion occurs when a ruling is clearly contrary to the logical conclusions demanded by the facts and circumstances of the case." *Hough*, 2017-NMCA-050, ¶ 18 (internal quotation marks and citation omitted).

{14}     In child custody cases, the paramount concern is the best interests of the children. *See id.* ¶ 28. Under the best interests analysis, the district court possesses

"considerable discretion" as long as it is "consistent with the evidence and statutory requirements." *Id.* ¶ 30 (internal quotation marks and citation omitted). "[District] courts are vested with broad discretion and great flexibility in fashioning custody arrangements and parenting plans that will serve *the best interests of the children*." *Rhinehart v. Nowlin*, 1990-NMCA-136, ¶ 47, 111 N.M. 319, 805 P.2d 88.

## I. The District Court Made Particularized Findings Supporting Its Best Interests Analysis and Did Not Abuse Its Discretion in Granting Primary Physical Custody to Father

**{15}** Mother first argues that the district court abused its discretion when it failed to make particularized findings "related to the statutorily mandated factors relevant to a determination of [C]hildren's best interest" under Sections 40-4-9(A) and -9.1(B). We disagree and explain.

**{16}** Section 40-4-9(A) and -9.1(B) respectively require the district court to consider "all relevant factors" in its best interests analysis, and to consider nine additional factors when deciding whether to award joint legal custody. The court is not required to "make point-by-point findings to correspond to the statutory factors," but it must "sufficiently track[] the factors, indicating that the court considered them in making its decision." *Thomas v. Thomas*, 1999-NMCA-135, ¶ 16, 128 N.M. 177, 991 P.2d 7. When the district court makes verbal findings, "the reviewing court may consider [them] . . . in order to clarify or discern the basis for the order or action of the court below." *Jeantete v. Jeantete*, 1990-NMCA-138, ¶ 11, 111 N.M. 417, 806 P.2d 66; *see Burris-Awalt v. Knowles*, 2010-NMCA-083, ¶ 10, 148 N.M. 616, 241 P.3d 617 (holding that failure to enter findings of fact and conclusions of law in writing with the final order is "not fatal if the findings and conclusions are part of the transcript on appeal").

**{17}** The applicable statutory factors under Section 40-4-9(A) are the following

> (1)    the wishes of the child's parent or parents as to his custody;

> (2)    the wishes of the child as to his custodian;

> (3)    the interaction and interrelationship of the child with his parents, his siblings and any other person who may significantly affect the child's best interest;

> (4)    the child's adjustment to his home, school and community; and

> (5)    the mental and physical health of all individuals involved.

The applicable statutory factors under Section 40-4-9.1(B) are the following

（1）	whether the child has established a close relationship with each parent;

（2）	whether each parent is capable of providing adequate care for the child throughout each period of responsibility, including arranging for the child's care by others as needed;

（3）	whether each parent is willing to accept all responsibilities of parenting, including a willingness to accept care of the child at specified times and to relinquish care to the other parent at specified times;

（4）	whether the child can best maintain and strengthen a relationship with both parents through predictable, frequent contact and whether the child's development will profit from such involvement and influence from both parents;

（5）	whether each parent is able to allow the other to provide care without intrusion, that is, to respect the other's parental rights and responsibilities and right to privacy;

（6）	the suitability of a parenting plan for the implementation of joint custody, preferably, although not necessarily, one arrived at through parental agreement;

（7）	geographic distance between the parents' residences;

（8）	willingness or ability of the parents to communicate, cooperate or agree on issues regarding the child's needs; and

（9）	whether a judicial adjudication has been made in a prior or the present proceeding that either parent or other person seeking custody has engaged in one or more acts of domestic abuse against the child, a parent of the child or other household member. If a determination is made that domestic abuse has occurred, the court shall set forth findings that the custody or visitation ordered by the court adequately protects the child, the abused parent or other household member.

**{18}** The district court's written decree of dissolution did not make point-by-point findings. It is framed as an order, and includes only the court's decision on custody and the parenting plan adopted by the court, as well as orders on the dissolution of the marriage and child support. However, the detailed oral ruling following the evidentiary hearing on Mother's objections to the GAL's recommendations did track the relevant statutory factors. We note that a number of factors were not in dispute: neither party claimed that the other interfered with transfers of custody; that they could not communicate and cooperate in meeting Children's needs; that they were both able to adequately care for Children; and that Children had a close relationship with both

parents. Indeed, it does not appear that either party opposed joint legal custody. The district court's finding that both parents had shown they could make adequate arrangements for the care of Children when they were working is challenged by Mother. That finding and the evidence supporting it are discussed below. The GAL found Children too young to be able to express a choice between the two parents' homes but it did not appear that they had a strong preference towards either parent, so that factor was not relevant. The district court found as to most of the factors that there was no clear choice as to which parent's primary custody was in Children's best interest.

{19} Faced with choosing one parent who would have primary custody given the distance between the parents' homes, the district court highlighted two findings of fact that significantly influenced its award of primary physical custody to Father (1) Mother's failure to report their daughter's sexual abuse for six months, while continuing to live with Children in the same home as the half-brother who had sexually abused their daughter; and (2) Mother's acceptance of government assistance she was no longer entitled to receive. The district court concluded from this behavior that Mother had demonstrated a concerning "propensity to see things her way and not maybe the reality."

{20} We find it entirely reasonable for the district court in making this difficult choice to rely on concerns about conduct by Mother in the past, which appeared to the court to value Mother's convenience and her finances (in continuing to live with her parents and in continuing to improperly, and perhaps illegally, receive government money), without seeing the potential impact of her choices on Children. We find no abuse of discretion in the district court's reliance on Mother's conduct in these two instances, together with the evidence that Children were thriving in their current placement with Father, to make the decision to award Father primary physical custody.

{21} We therefore hold that the district court made adequate findings and did not abuse its discretion in evaluating and weighing the relevant statutory factors and determining based on those factors that Father should have primary physical custody of Children.

## II. Substantial Evidence Supports the District Court's Finding Regarding Father's Ability To Provide Adequate Care

{22} Mother next argues that the district court's finding that Father could provide "adequate care for [Children] throughout each period of responsibility, including arranging for [Children]'s care by others as needed," § 40-4-9.1(B)(2), is not supported by substantial evidence in the record. Mother contends that the evidence conclusively showed that Children were not being adequately cared for by their paternal grandparents, who were taking care of Children after school while Father was working. Mother claims that there is no evidence in the record supporting the district court's finding that the substitute care arrangements made by Father with grandparents were adequate.

**{23}** We will uphold a district court's custody findings if they are supported by substantial evidence. *Grant v. Cumiford*, 2005-NMCA-058, ¶ 13, 137 N.M. 485, 112 P.3d 1142. "Substantial evidence is such relevant evidence that a reasonable mind would find adequate to support a conclusion." *Hough*, 2017-NMCA-050, ¶ 18 (internal quotation marks and citation omitted). "If the evidence shows that the [district] court's decision is based on reasonable, substantial, and probative evidence, so that it can be said that a reasonable person might have reached the same conclusion, the trial court's decision should be affirmed." *Brito v. Brito*, 1990-NMCA-062, ¶ 16, 110 N.M. 276, 794 P.2d 1205. The district court's finding that Father arranged for adequate care for Children while he was working is supported by substantial evidence.

**{24}** The evidence shows that Father made the decision that it was in Children's best interest to be cared for by relatives while he was at work. Father testified that his mother's home was near his son's school. Father's son would have a much shorter ride to school in the morning than from his house, and could take the bus directly to Father's mother's house at the end of the school day.

**{25}** Children had been living primarily with Father, and grandparents had been taking care of Children for nearly a year at the time of the hearing. Children appeared healthy and content in their current environment. Father testified that his son was doing well in school, and the GAL reported that he saw no evidence of Children's inability to adjust to their home in Odessa. This constitutes substantial evidence to support a determination that the care being provided by Father and grandmother was adequate to meet Children's needs, and indeed, was the best available alternative.

**{26}** Mother focuses on evidence that Children and Father slept overnight some nights at grandmother's home so that Children could more easily get to school in the morning. Mother claims that the fact that Children slept on grandmother's living room floor with Father on those nights conclusively shows that the care provided to Children by Father and grandmother was inadequate. We do not agree.

**{27}** Both the statutory factors to consider in determining a child's best interests in a divorce, and our common law concerning a child's best interests, values a child's relationship with their parents and other family members above a comparison of the material facilities each parent can provide. *See Shorty v. Scott*, 1975-NMSC-030, ¶ 11 n.9, 87 N.M. 490, 535 P.2d 1341 (stating that the parent-child relationship is a more important consideration in determining the best interest of a child than "material and economic factors," and someone's ability to provide better facilities to the child is not an important consideration (internal quotation marks and citation omitted)). The positive evidence concerning Children's adjustment to their home, school, and community during their time living primarily with Father, of their comfort with grandmother, and of the practical advantages of taking the school bus to and from grandmother's house one or two nights a week constitutes substantial evidence in the record supporting the district court's finding that Father could provide "adequate care for [Children] throughout each period of responsibility, including arranging for [Children]'s care by others as needed." *See* § 40-4-9.1. We are not persuaded by Mother's claim of error.

### III.     The District Court Properly Adopted the GAL's Recommendations

**{28}**     Finally, Mother argues that the district court improperly adopted the GAL's recommendations instead of preparing its own findings of facts and conclusions of law. We disagree.

**{29}**     According to Rule 1-053.3(A), the district court may appoint a GAL whenever the "custody of minor children is contested" by any party in a divorce proceeding. A GAL "provides independent services without being bound by the child's or another party's directives or objectives." *Kimbrell v. Kimbrell*, 2014-NMSC-027, ¶ 10, 331 P.3d 915. The GAL is charged with making "findings and recommendations to the court regarding the best interests of the child." *Id.* Although the district court is not permitted to "delegate the ultimate determination of the child's best interests," § 1-053.3(D), to the GAL, the district court does not improperly "abdicate its decision-making responsibility" if it adopts the GAL's recommendations. *Thomas*, 1999-NMCA-135, ¶ 25. Rule 1-053.3(A) states that "[t]he [GAL] serves as an arm of the court and assists the court in discharging its duty to adjudicate the child's best interests." The GAL is charged with performing an investigation that the district court is unable to conduct on its own, and preparing recommendations.

**{30}**     The fact that the district court adopts the GAL's recommendations with few changes does not demonstrate that the court has abdicated its decision-making responsibility. Where the district court has stated its findings and its reasons for accepting the GAL's recommendations, as it has in this case, the adoption of the GAL's recommendations achieves the purpose of Rule 1-053.3: to provide meaningful assistance to the district court in carrying out the court's responsibilities.

**CONCLUSION**

**{31}**     For the foregoing reasons, we affirm the custody order and parenting plan adopted by the district court.

**{32}     IT IS SO ORDERED.**

**JANE B. YOHALEM, Judge**

**WE CONCUR:**

**JACQUELINE R. MEDINA, Judge**

**ZACHARY A. IVES, Judge**