This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**ROMAN CHIP,**

     Petitioner-Appellant,

v.                                                                 **No. 33,958**

**SOVANKOTHEA (THEA) CHIP (n/k/a MILLS),**

     Respondent-Appellee,

v.

**STATE OF NEW MEXICO, ex rel. HUMAN SERVICES DEPARTMENT,**

     Intervenor.

**APPEAL FROM THE DISTRICT COURT OF DON˜A ANA COUNTY**
**Mary W. Rosner, District Judge**

Caren I. Friedman
Santa Fe, NM

for Appellant

Grace B. Duran
Las Cruces, NM

for Appellee

**MEMORANDUM OPINION**

**FRY, Judge.**

{1}    Father appeals the district court's alteration of a joint custody order that permitted Mother to relocate with Children to Germany. Father argues on appeal that the district court applied the wrong legal standard, that the district court's ruling violates his right to due process, and that the district court abused its discretion in excluding Daughter's journal from disclosure. Because we conclude that the district court applied the correct legal standard and that the exclusion of Daughter's journal was harmless error, we affirm.

{2}    Because this is a memorandum opinion and the parties are familiar with the facts and procedural history, we reserve further discussion of the pertinent facts for our analysis.

**DISCUSSION**

**Standard of Review**

{3}    "A determination of custody will not be overturned on appeal absent a manifest abuse of the trial court's discretion." *Brito v. Brito*, 1990-NMCA-062, ¶ 7, 110 N.M.

276, 794 P.2d 1205. To the extent that Father's argument requires us to engage in statutory interpretation, we review such questions de novo. *See Morgan Keegan Mortg. Co. v. Candelaria*, 1998-NMCA-008, ¶ 5, 124 N.M. 405, 951 P.2d 1066.

**The District Court Applied the Correct Legal Standard**

{4}     Father argues three reasons why the district court applied an incorrect legal standard. First, Father argues that, under *Jaramillo v. Jaramillo*, 1991-NMSC-101, 113 N.M. 57, 823 P.2d 299, the district court failed to elicit testimony from a special master or guardian ad litem as to whether the relocation was in Children's best interest. Second, Father argues that the district court substituted a "points of contact" inquiry in lieu of the statutory factors it was required to consider. Third, Father argues that courts should be required to consider additional requirements for determining whether an international relocation is in a child's best interest. We address these issues in turn.

{5}     In regard to the first issue, we disagree that the district court had a duty to *sua sponte* consult a guardian ad litem or otherwise elicit expert testimony regarding Children's best interest where neither party requested it. In *Jaramillo,* our Supreme Court stated that in determining the best interest of a child, "[i]t . . . becomes incumbent on the trial court to consider as much information as the parties choose to

submit, or to elicit further information on its own motion [from a court-appointed expert, special master, or guardian ad litem] or such other sources as the court may have available, and to decide what new arrangement will serve the child's best interests." 1991-NMSC-101, ¶ 27. This statement in *Jaramillo* does not stand for the proposition that a district court has a duty as a matter of law to consult these sources. Instead, in the context of the opinion, it stands as a recognition by our Supreme Court that district courts *may* consult these sources and that they can be important in determining a child's best interest. This interpretation of *Jaramillo* is supported by the fact that the appointment of a guardian ad litem is within the discretion of the district court. *See* NMSA 1978, § 40-4-8(A) (1993) ("In any proceeding for the disposition of children when custody of minor children is contested by any party, the court *may* appoint an attorney at law as guardian ad litem on the court's motion." (emphasis added)).

{6}     Second, although we recognize that the district court's decision could have benefitted from a more focused analysis of the statutory factors, we conclude that the basis of the decision is sound and not an abuse of discretion. In determining whether to alter an existing custody arrangement, the paramount inquiry is what is in the best interest of the child. NMSA 1978, § 40-4-9(A) (1977); *Jaramillo*, 1991-NMSC-101,

3

¶ 13 ("The 'best interests' criterion . . . is the lodestar for determining a custody award[.]"). Under *Jaramillo*, "[e]ach party [has] the burden to persuade the court that the new custody arrangement or parenting plan proposed by him or her should be adopted by the court . . . [and] the court remains free to adopt the arrangement or plan that it determines best promotes the child's interest." 1991-NMSC-101, ¶ 27. Although neither Section 40-4-9 nor NMSA 1978, Section 40-4-9.1 (1999) specifically mentions the factors a district court is to consider when *modifying* a joint custody order due to an impending relocation, it seems apparent that the factors listed for "determining whether a joint custody order is in the best interests of the child" would include such modifications to a previous joint custody order. Section 40-4-9.1(B). Therefore, the factors listed in Sections 40-4-9.1 and 40-4-9 are the relevant principles of determining a child's best interest under these circumstances. *See* Section 40-4-9.1(B) (requiring a district court to consider the factors listed Section 40-4-9 in addition to Section 40-4-9.1's factors).

{7}     In this case, the district court provided two reasons for its decision. The district court stated that "[C]hildren have more points of contact with [Mother] and [Stepfather] and their two children [(Children's half-siblings)] compared to [Father]

4

and the extended family and friends in New Mexico" and that "there are cultural advantages in Germany and travel opportunities for [C]hildren in Europe."

**{8}** As an initial matter, we accord no deference to the district court's finding regarding Children's cultural opportunities in Europe. Granted, it is possible, from an adult's perspective, to romanticize the cultural opportunities presented by living in Europe. The district court certainly seemed enamored of the idea, even going so far as to suggest that Father also move to Germany. However, it is doubtful that this sentiment in any way compares to the significant relationship interests at stake in this case, not only between Children and their Father, but also between Children and their extended family and other corresponding ties to the Las Cruces community. Furthermore, the finding is arbitrary. These same cultural opportunities would be present had the district court decided that Children should remain in New Mexico during the school year and visit Mother during summer vacation. Therefore, we conclude that this factor has no bearing on determining the validity of the district court's decision.

**{9}** That said, we are unconvinced that the district court's "points of contact" finding was an abuse of discretion. As the district court noted, both parents presented compelling reasons as to why Children should be placed in their respective homes. On

the one hand, Children had well-established family ties in Las Cruces and were, by all accounts, positively engaged in the broader community through important friendships, scholastic achievements, and religious participation. On the other hand, Children have two half-siblings through Mother and a positive relationship with their stepfather. These considerations directly relate to statutory factors concerning "the interaction and interrelationship of the child with his [or her] parents, his [or her] siblings and any other person who may significantly affect the child's best interest" and "the child's adjustment to his [or her] home, school and community." Section 40-4-9(A)(3)-(4). Although the phrase "points of contact" does not appear in the statutory factors, we understand the district court's decision to ultimately be a determination that the relationship between Children and their half-siblings and, to a lesser degree, the stepfather, prevailed over Children's ties to Las Cruces. While we acknowledge that reasonable minds could differ in respect to this decision, we cannot say that the district court's determination rises to the level of an abuse of discretion. *See Talley v. Talley*, 1993-NMCA-003, ¶ 12, 115 N.M. 89, 847 P.2d 323 ("When there exist reasons both supporting and detracting from a trial court decision, there is no abuse of discretion.").

**{10}**     Third, we decline to consider Father's arguments asking this Court to impose additional considerations in international relocation cases. This argument was not raised below, and it was therefore not preserved. *See Woolwine v. Furr's, Inc.*, 1987-NMCA-133, ¶ 20, 106 N.M. 492, 745 P.2d 717 ("To preserve an issue for review on appeal, it must appear that appellant fairly invoked a ruling of the trial court on the same grounds argued in the appellate court."). Furthermore, the factors a district court utilizes in determining whether to modify a joint custody award to permit relocation are statutory and, thus far, the Legislature has not seen fit to distinguish between national and international relocations.

**{11}**     Finally, because we disagree with Father that the district court's decision was erroneous, we further conclude that the decision did not violate Father's due process rights. We add, however, that any suggestion that Mother had the choice to remain in Las Cruces while her husband was stationed in Germany is as unrealistic a solution as the district court's suggestion to Father that he also move to Germany. Relocation of a parent in a joint custody arrangement is an unfortunate reality. However, our Legislature has provided statutory considerations for district courts to use in determining the best interest of the children involved and to implement parenting

plans that, as much as possible, ensure meaningful participation of both parents in a child's upbringing.

**Exclusion of Daughter's Journal was Harmless Error**

**{12}** Father argues that the district court abused its discretion in prohibiting disclosure of Daughter's journal. The journal was apparently kept between Mother and Daughter. Father sought production of the journal in order to investigate any communications between Mother and Daughter regarding the relocation, specifically whether Mother was attempting to keep the move secret from Father and influence Daughter's amenability to the move. The district court granted Mother's request for a protective order prohibiting the journal's disclosure and further preventing any mention of the journal at trial.

**{13}** "The standard of review for discovery orders is abuse of discretion." *Pincheira v. Allstate Insurance Co.*, 2007-NMCA-094, ¶ 27, 142 N.M. 283, 164 P.3d 982. However, where a district court's "discretionary decision is premised on the construction of a privilege . . . review of that decision presents a question of law, subject to de novo review." *Id.*

**{14}** We first summarize the district court's decision. The only reason given in the order is that "[D]aughter's journal is her personal property and will not be disclosed.

8

However, review of the hearing on the motion provides further insight into the court's decision. The court indicated that the first inquiry in determining whether the journal was subject to disclosure was, "Whose property is it?" In remarking that the journal was the personal property of Daughter, the court explained:

> Having been a nine-year-old daughter myself, and having many sisters and many females in my life, [and] having a journal that one shares with a mother or a trusted aunt . . . this is incredibly private. Things that she is only willing to disclose with another adult, who is trusted, have been put in this journal. How do I know that? I don't know that for a fact. I do know nine-year-old girls. And this is a trusted document.

The court then reiterated that the journal is "private and it doesn't belong to the mom and it doesn't belong to the dad," and, therefore, it was not subject to disclosure.

{15} We are unsure where the district court got the notion that the primary inquiry was determining whom the journal belonged to. There did not seem to be a dispute that Mother was in possession of the journal. Mother instead argued that it was not subject to discovery because it was a "personal and private communication between Mother and Daughter." Therefore, the primary inquiries were whether the communications were relevant to the proceedings and, if so, whether they were privileged. Rule 1-026(B)(1) NMRA ("Parties may obtain discovery of any information, not privileged, which is relevant to the subject matter involved in the

9

pending action."). Concluding that a communication is "personal property" does nothing to address these concerns.

{16} Furthermore, while we understand the district court's personal anecdote indicating that a nine-year-old would likely be mortified to have his or her journal containing private thoughts discussed in open court, we are not aware of any provision of the law that protects these types of communications as privileged. Rule 11-501(C) NMRA ("Unless required by the constitution, these rules, or other rules adopted by the [S]upreme [C]ourt, no person has a privilege to . . . refuse to produce any object or writing."). There are any number of intensely private communications that are unprotected by our rules of privilege, and compelling reasons must exist to prohibit their disclosure. Rules 11-501 to 11-514 NMRA (listing specific privileges). The fact that they are personal property is not, in itself, such a justification.

{17} Despite these misgivings regarding the district court's decision, we conclude that any alleged error was harmless. "In civil litigation, error is not grounds for setting aside a verdict unless it is inconsistent with substantial justice or affects the substantial rights of the parties." *Kennedy v. Dexter Consol. Schs.*, 2000-NMSC-025, ¶ 26, 129 N.M. 436, 10 P.3d 115 (internal quotation marks and citation omitted). The complaining party carries the burden to show that the error created prejudice. *Id.*

10

{18}    Father argued at the hearing that the journal was relevant to whether Mother is willing to support his relationship with Children. Father believed that evidence that Mother was keeping the move secret from Father and potentially attempting to influence Daughter's feelings about the move would show that she is not willing to do so. Father argued that the district court had to consider each parent's willingness and ability to allow the other parent's relationship to flourish. While not technically correct, this consideration is encapsulated by Sections 40-4-9.1(B)(5) and (8), which direct the court to consider "whether each parent is able to allow the other to provide care without intrusion, that is, to respect the other's parental rights and responsibilities and right to privacy . . . [and the] willingness or ability of the parents to communicate, cooperate or agree on issues regarding the child's needs[.]"

{19}    We are unconvinced, however, that disclosure of the journal would have had any meaningful effect on the outcome of this case. While the district court did not allow discussion of the journal, the district court did allow counsel to cross-examine Mother regarding her communications with Daughter about the move. Both parents testified to their history of cooperation, albeit with some expected difficulties, in ensuring that each had "predictable, frequent contact" with Children and a commitment to ensuring that the same level of cooperation exists in the future. Section

11

40-4-9.1(B)(4). In fact, Father testified that the parents have good communication and agreed that good communication is inconsistent with a claim of parental alienation. Likewise, both Mother and her husband acknowledged that Father was a very devoted father, had strong bonds with Children, and that Children had expressed apprehension about the move. Such testimony, particularly on the part of Mother, is inconsistent with a claim that Mother was attempting to influence Daughter's attitude toward the move or to create alienation in the father/daughter relationship. Because those issues did not appear to be in dispute, production of the journal and discussion of its contents was of little value in these proceedings. Accordingly, we conclude that the error was harmless.

**CONCLUSION**

{20}    For the foregoing reasons, we affirm the district court.

{21}    **IT IS SO ORDERED.**

_____
**CYNTHIA A. FRY, Judge**

**WE CONCUR:**

_____
**JAMES J. WECHSLER, Judge**

12

_____

**LINDA M. VANZI, Judge**